CAVANAUGH, APPELLANT, *v.*
NATIONWIDE MUTUAL INS. CO. ET AL., APPELLEES.
HANNAMAN, APPELLANT, *v.*
NATIONWIDE MUTUAL INS. CO. ET AL., APPELLEES.

[Cite as Cavanaugh v. Nationwide Mutual Ins. Co. (1976),
65 Ohio App. 2d 123.]

(Nos. 8134 and 8135—Decided November 10, 1976.)

*Mr. Raymond J. Grabow* and *Mr. Anthony A. Gedos,* for appellants.

*Mr. Robert J. Drexler,* for appellees.

*Per Curiam.* These companion appeals arise from summary judgments entered in favor of defendants-appellees, Nationwide Mutual Life Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Heritage Securities, Inc. (collectively known as Nationwide Insurance and hereinafter referred to as Nationwide), and various agents of Nationwide.

Plaintiff-appellant Ronald Cavanaugh was an "agent" for defendant Nationwide for twenty-two years. For the past sixteen years, he entered into an annually renewable Agency Agreement with Nationwide whereby he would sell insurance only for Nationwide. Plaintiff-appellant Carlos N. Hannaman sold insurance under the same Agency Agreement for approximately sixteen and one half years. During 1975, Nationwide terminated the Agency Agreements of both plaintiffs.

As a result of Nationwide's actions, both plaintiffs filed suit in the Court of Common Pleas of Summit County against the above named defendants and the Superintendent of Insurance for the state of Ohio seeking various forms of relief. Both cases were considered on a consolidated basis. During pretrial proceedings, the trial court dismissed the Superintendent of Insurance from the cause.

The parties entered into extensive discovery, including numerous depositions. Following discovery, defendants filed a motion for summary judgment with respect to both cases. Plaintiffs filed briefs, depositions and affidavits in opposition to defendants' motion. After considering the arguments, the trial court sustained defendants' motion and entered summary judgment against both plaintiffs. Each plaintiff filed separate appeals from these judgments; these cases were consolidated for purposes of appeal.

Plaintiffs' sole assignment of error is:

"The trial court erred and abused its reasonable discretion in granting defendants-appellees' motion for summary judgment where the basis for the same was an unenforceable provision of a contract and which is not even relevant to nor dispositive of the plaintiffs-appellants' various causes of action."

The Agency Agreement provides, in pertinent part:

"1. Independent Contractor. The parties agree that the purpose of this Agreement will be best served by your acting as an independent contractor. Therefore, it is agreed that you are an independent contractor for all purposes. As an independent contractor, you have the right to exercise independent judgment as to time, place, and manner of soliciting insurance, servicing policyholders, and otherwise carrying out the provisions of this Agreement. Insurance being a closely regulated business, it is understood that it will be necessary for us to provide you with certain manuals, forms, records, and such other

materials and supplies as are necessary in the conduct of an insurance business. All such property furnished to you by the Companies or on behalf of the Companies shall remain the property of the Companies and be returned to them in good condition upon any termination of this Agreement. We may offer to you, from time to time, training, counsel, and guidance based upon our accumulated experience in the sale and servicing of business. However, it is understood that you may reject or accept such offers at your discretion.

"* * *

"9. Termination. This Agreement shall continue from its effective date until the end of the current year and shall be automatically renewed thereafter from year to year unless sooner terminated.

"This Agreement shall automatically terminate upon the date your license to act as an agent for the Companies is revoked or cancelled, or upon your death, or normal retirement at age sixty-five (65). Further, due to the personal nature of our relationship you or the Companies have the right to terminate this Agreement at any time after written notice has been delivered to the other or mailed to the other's last known address.

"* * *

"12. Agent's Activities After Termination. (Applicable only to agents entering an independent contractor's agreement for the first time on and after July 1, 1969).

"You agree that if the contract is terminated within a period of five years from the date of your first contract as an agent with the Company, you will not, either directly or indirectly, by and for yourself or as an agent for another or through others as their agent, engage in or be licensed as an agent, solicitor, representative, or broker or in any way be connected with the fire, casualty, health, or life insurance business for a period of one year from the date of the voluntary or involuntary termination of this Agreement or, should we find it necessary by legal action to enjoin you from competing with us, one year after the date such injunction is obtained, in the following area: Within 25 Miles***. In any jurisdiction where a covenant similar to that appearing above is held to be invalid either by statute or by judicial decision, you agree upon termination of this Agreement you shall thereafter

refrain from further solicitation or by servicing of policyholders of the Companies and from interfering in any way for a period of one year with existing policies and policyholders in the geographical area described above.

"In the event that we are successful in any suit or proceeding brought or instituted by us to enforce any of the provisions of this Agreement or on account of any damages sustained by us by reason of the violation by you of the terms and/or provisions of this Agreement, you agree to pay to us such reasonable attorneys' fees as are permitted by statute and fixed by the court."

Plaintiffs' complaints (pleadings), which are identical except for certain factual differences, seek several forms of relief based on eight counts. The complaints allege a contractual relationship between plaintiffs and Nationwide whereby plaintiffs are independent of any control of Nationwide. They further allege that the agreement was automatically renewable from year to year. The complaints then allege that:

"Plaintiff[s] further***[state] that by virtue of the arbitrary, malicious, capricious, and intentional acts of the defendants NATIONWIDE, together with its agents, servants and employees, said parties did interfere with plaintiff[s'] independent operation of***[their] business, did intimidate plaintiff[s] by the use of direct and implied threats of agency termination and loss of***[their] business and accrued benefits, and by virtue of the aforesaid actions as indicated, defendants have, and continue to do so, threaten to deprive plaintiff[s] of***[their] private and independent business***without just cause, so as to deprive***[them] of***[their] persona [sic], property, civil and legal rights, individually and as ***business[men], to operate***[their] own business unhindered by influence from said defendants and in a quiet peaceful manner."

Plaintiffs then set forth the eight causes of action and allege that:

First Count: Plaintiffs have substantially complied with the Agency Agreement; yet defendants threaten not to renew the agreement. And, as a result of prior renewals and the successful operation of plaintiffs' business, defendants are estopped to arbitrarily terminate the agreement and defendants should be enjoined from doing such.

Second Count: Defendants are estopped to terminate the agreement and have waived any ostensible rights to do so because of plaintiffs' substantial compliance with the Agency Agreement; and that irreparable injury and damage would be inflicted upon plaintiffs were defendants allowed to do so.

Third Count: "***[T]he efforts by defendants, NATION-WIDE, together with their agents, servants and employees, to control plaintiff[s] in the operation of***[their] insurance agency business[es] as***independent contractor[s] are contrary and inconsistent with the provisions of the written 'Agent's Agreement'; ***the written agreements involved, together with the implied agreement[s] between plaintiff[s] and defendant[s] for an 'Agent's Agreement' renewal, based on substantial compliance of the agreement terms, are properly subject to clarification and interpretation by the Court by way of a Declaratory Judgment***."

Fourth Count: By virtue of the long standing business arrangement plaintiffs have developed vested rights in and to the continuation of their agency and insurance businesses. Plaintiffs have developed substantial equity value in their businesses and clientele. Defendants seek to usurp plaintiffs' businesses, books and clientele and seek to restrict plaintiffs from enjoying the insurance business within a twenty-five mile radius from the present business locations for a period of one year. Plaintiffs' termination will cause them to lose fringe benefits that are offered to agents of Nationwide and Nationwide will be unjustly enriched by plaintiffs' termination. Plaintiffs seek to temporarily and permanently enjoin defendants from dispossessing plaintiffs from their agencies and/or their license to sell and issue insurance for Nationwide.

Fifth Count: Should equitable relief be denied to plaintiffs, they seek a determination that the restriction from engaging in the sale of insurance be declared void, and that the court grant plaintiffs damages for the equity value of the businesses. In addition, plaintiffs request punitive damages for the unilateral, malicious, intentional, wanton, capricious, arbitrary and intentional injury to plaintiffs' personal reputations, businesses and livelihoods.

Sixth Count: As an alternative relief, should equitable relief be denied, plaintiffs seek damages for defendants' harassment of plaintiffs, impugning plaintiffs' "business and

personal character and reputation[s] as***sound citizen[s] and excellent business[men] and independent insurance agent[s], and for defaming plaintiff[s'] reputation[s] and character as***decent human being[s] and sound, experienced and successful business[men]; and for conspiring to breach and for intentional[ly] breaching the tacit and implied agreement[s] to renew plaintiff[s'] agency agreement to enable plaintiff[s] to continue***[their] business[es] and to continue to earn a livelihood and conspiracy to remove plaintiff[s] as***long-term NATIONWIDE agent[s]***."

Seventh Count: "***that plaintiff[s] be awarded from the defendants***compensatory damages for the malicious, wanton, intentional, capricious, arbitrary, and intentional interference by said defendants into plaintiff[s'] contractual relationship with defendant NATIONWIDE; and***punitive damages therefor, together with reasonable sums as and for attorney fees and expenses."

Eighth Count: That defendants "as a result of the acts complained of, did discriminate against plaintiff[s] in*** [their] business operation[s] and***[their] agent[s'] contract[s] with defendant NATIONWIDE, solely by reason of plaintiff[s'] age[s], so as to deprive***[them] of***[their] livelihood and means of support, and with the result of injuring***[them] in***[their] person and livelihood and reputation." That plaintiffs have been denied their civil rights and seek damages together with reasonable attorney fees and expenses for the loss of profits and goodwill of their businesses.

In its ruling on the motion for summary judgment, the trial court found that the termination paragraph of the Agency Agreement was not unconscionable. It also found:

"In the case now before this Court, the Plaintiffs are relying on oral statements to contradict a written Agreement. The plaintiffs in effect claim that the written Agreement means nothing, and they were entitled to rely on statements that an agent would not be terminated while doing his job.

"It will always be an impossible question for a court to determine whether an agent was doing his job. To allow the Plaintiffs to get to the jury in a case of this type would eliminate the written employment and agency agreements, and in effect require the courts to make agreements for the parties if either side was not satisfied. This would provide an

impossible burden for the courts and would terminate all business arrangements as they now stand. In effect, it would leave the courts to decide whether the agent was operating suitably or otherwise. It is not possible to allow Plaintiffs to take advantage of the many good provisions of their written Agreement while permitting them to avoid the written Agreement whenever they desire. This would, in effect, completely change all methods of conducting business and would probably eliminate the agency concept entirely.

"If the Legislature decides to protect the agents, they may pass a law providing same is within the bounds of the Constitution. This apparently was done by Congress in the matter of automobile dealerships.

"In the meantime, the Court is of the opinion that to allow Plaintiffs to get to a jury or to a court with their claims in this case would destroy all business relations and contracts as we now know them, and result in complete socialization of the entire insurance business."

Plaintiffs make several arguments. Most of these arguments concern the trial court's alleged failure to rule on the claims involving intentional torts. They contend that the trial court only ruled on the validity of the termination clause and failed to rule on the intentional tort claims.

Initially, we determine that the trial court ruled on all the causes of action. In addition, we find that the trial court correctly sustained defendants' motion for summary judgment on these causes of action. A thorough review of all of the briefs, affidavits and depositions offered by plaintiffs fails to establish any set of facts that would be necessary to sustain a cause of action for any of the alleged intentional torts.

Plaintiffs also contend that the trial court erred in not finding that the language in the termination paragraph of the Agency Agreement is void, unenforceable and against public policy due to the provisions of R. C. 4101.17, which provides:

"No employer shall refuse opportunity of interview for employment of applicants or discharge without just cause any employee between the ages of forty and sixty-five who are physically able to perform the duties and otherwise meet the established requirements of the industry and laws pertaining to the relationship between employer and employee."

This section does not apply to plaintiffs. The language

specifically limits this section to an employer-employee relationship. Plaintiffs admitted independent contractor status prohibits them from utilizing this statute to seek redress from defendants.

Plaintiffs final argument concerns their contention that the "termination at will" provision of the Agency Agreement is unconscionable and a result of the unequal bargaining power between plaintiffs and Nationwide. Plaintiffs seek to apply R. C. 1302.15 to their agreements in support of this contention. However, this section is part of the Ohio statutes which concern the sale of goods. As we stated in *Environmental Structures* v. *Montrose Recreation Center* (Summit Co. Ct. of Appeals No. 7850, December 17, 1975), unreported, a contract that predominantly involves services is not governed by the provisions of R. C. Chapter 1302. We are not now prepared to expand the scope of R. C. 1302.15 to apply to service contracts as was done in those foreign jurisdiction cases cited by plaintiffs.

Accordingly, we determine that the trial court correctly entered summary judgments on defendants' behalf and plaintiffs' assignment of error is without merit.

The judgment of the Court of Common Pleas of Summit County is affirmed.

*Judgment affirmed.*

VICTOR, P. J., DOYLE and HARVEY, JJ., concur.

DOYLE, J., of the Ninth Appellate District, retired, and HARVEY, J., of the Court of Common Pleas of Summit County, retired, were assigned to active duty under authority of Section 6(C), Article IV, Constitution.