## Kurtz v.
### Harcourt Brace Jovanovich, Inc.
*[Cite as 6 AOA 241]*

*Case No. 57413*
*Cuyahoga County, (8th)*
*Decided August 23, 1990*

*David Roloff, Gaines & Stern Co., L.P.A., 1700 Ohio Savings Plaza Boulevard, East Ninth Street, Cleveland, Ohio 44114, for Plaintiff-Appellant.*

*Peter A. Hessler, Wegman, Hessler & O'Toole, 6100 Rockside Woods 1801, Suite 345, Cleveland, Ohio 44131, for Defendant-Appellees.*

## McMANAMON, P.J.

In a timely appeal Robert J. Kurtz seeks review of a summary judgment in favor of defendants Harcourt Brace Jovanovich, Inc. ("HBJ") and its successor, Edgell Communications, Inc. ("Edgell"), on claims for age discrimination in violation of R.C. 4101.17(B), and for tortious infliction of emotional distress. Kurtz raises three assignments of error[1] contending that unresolved issues of material fact precluded summary judgment and that the trial court erred when it struck his jury demand. For the reasons which follow, we affirm summary judgment on the emotional distress claims. We are compelled, however, to reverse the judgment of the court on Kurtz's age discrimination cause.

In 1977 Kurtz and HBJ entered into a written agreement which designated Kurtz an "independent publisher's representative" selling advertising in four HBJ publications in a ten state area. The agreement provided that Kurtz would receive a fifteen percent (15%) commission on advertising revenue generated in his assigned territory and that he was entitled to vacation and group insurance benefits. HBJ required Kurtz to pay all his expenses including travel, entertainment of clients, secretarial services and all other selling costs. HBJ supplied available promotional materials and sales aids. In 1985 the parties agreed to a new contract which was identical to the 1977 agreement except that it excluded vacation and insurance benefits and changed Kurtz's territory.

HBJ terminated the representation agreement in May 1986. Kurtz, who was then fifty-two years of age, claimed that the discharge was discriminatory because he was let go without explanation from a position for which he was qualified only to be replaced by two salespersons in their thirties. He also alleged that, as a result of the discharge, he suffered stress, bodily strain and fear.

HBJ countered that the parties had no employer/employee relationship thus barring the R.C. 4101.17(B) claim. It posited that Kurtz was an independent contractor.

In his first assignment of error, Kurtz posits that adjudication of his age discrimination claim by summary judgment was error because the court improperly concluded that Kurtz was an independent contractor as a matter of law.

Summary judgment may be granted only when no genuine issue of material fact remains to be litigated, and when, construing the evidence in the light most favorable to the nonmovant, the moving party is entitled to judgment as a matter of law. *Harless v. Wills Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66; Civ. R. 56. See, also, *Bostic v. Connor* (1987), 37 Ohio St. 3d 144. It is generally recognized that "*** where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be decided by the court." *Bostic, supra*, at 146, citing *Schickling v. Post Publishing Co.* (1927), 115 Ohio St. 589. The issue is a question for the fact finder, however, 'when the claimant offers some evidence that he was an employee. *Id.* at 147. Furthermore, when competing, reasonable inferences may be drawn from undisputed or admitted facts, determination of status as an employee or independent contractor should be resolved by the trier of fact. *Duke v. Sanymetal Products, Co.* (1972), 31 Ohio App. 2d 78.

R.C. 4101.17(B) governs employer/employee relationships. *Cavanaugh v. Nationwide Mutual Ins.* (1976), 65 Ohio App. 2d 123. Independent contractors are excluded from redress pursuant to R.C. 4101.17(B)." *Id.*

The trial court applied a twelve factor totality of the circumstances test to establish the character of the parties' relationship. We believe, however, that the proper standard for determining the status of the parties is the same test used by the Ohio Supreme Court in workers' compensation cases.

"The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created." *Gillum v. Indus. Comm.* (1943), 141 Ohio St. 373, paragraph two of the syllabus. See, also, *Bostic, supra.*

The determination of the right to control is made by examining the facts of each case. *Bostic, supra.* Facts that should be considered include:

"*** such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled; the length of employment; the type of business;

the method of payment; and any pertinent agreements or contracts." *Id.* at 146.

HBJ presented evidence which tended to prove that Kurtz was an independent contractor. Robert Moeller, president of both HBJ and Edgell, averred that Kurtz received different benefits, insurance coverage and compensation from that of HBJ employees. He stated that the company paid Kurtz a straight commission which was reported for tax purposes as "non-employee compensation." HBJ neither withheld taxes from Kurtz 's commission nor included Kurtz in its worker's compensation or unemployment compensation benefits. The representation contract required Kurtz to pay all his business expenses. HBJ also pointed out that Kurtz maintained his own office and phone.

Kurtz submitted facts to indicate that HBJ had the right to control the manner and means by which he did his work. By the terms of their agreement, HBJ not only required Kurtz to attend all trade shows in his territory, but sometimes dispatched him to trade shows in other parts of the country. When deposed, Kurtz swore that HBJ required that he travel to make sales calls sometimes arranged sales calls for him and evaluated his performance after observing him on sales calls. Kurtz claims he submitted oral and written sales call reports to the publishers of both magazines he represented. HBJ also gave Kurtz written directives as to how to conduct business, e.g., that he conduct calls in-person, develop his own sales aids, write sales letters and travel. Though Kurtz acknowledged that he maintained a separate office and phone, he added that the office phone number was listed in the telephone directory under Harcourt, Brace, Jovanovich, Inc.

The court noted that Kurts used the federal tax forms and plans provided for self employed persons, thereby admitting he was self employed. Even when a litigant has made inconsistent statements on summary judgment, a court is required to construe evidence most strongly in favor of the non-movant. See Civ. R. 56; *Harless, supra; Bostic; supra.* Kurtz's apparent inconsistencies regarding his status create a question of credibility for a fact finder. *Daniel v. Mayfield* (Oct. 31, 1989), Delaware App. No. 89-CA-15, unreported.

Evidence submitted to the court was sufficient to permit reasonable minds to differ as to the character of the relationship between Kurtz and HBJ. Though the facts are not disputed, the inferences to be drawn from them are. The function of drawing inferences from undisputed facts is for the trier of fact. See *Bostic, supra; Duke, supra.* We find that because the court impermissibly acted as a fact finder in granting a Civ. R. 56 judgment, we are obliged to reverse and remand for further proceedings. Cf. *Bituminous Casualty Corp. v. Geitgey* (July 17, 1989), Stark App. No. CA-7738, unreported.

Kurtz mistakenly focused on the definitions of "employee" found at R.C. 4101.01 or at R.C. 4112.01 arguing that these definitions apply to his claim of age discrimination brought pursuant to R.C. 4101.17. Neither of these definitions are applicable.

R.C. 4101.01 provides, in part, as follows:

"As used in sections 4101.01 to 4101.16 of the Revised Code:

"* * *

"(D) 'Employee' means every person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go, or work, or be at any time in any place of employment."

R.C. 4112.01(A) provides in relevant part:

"As used in sections 4112.01 to 4112.11 of the Revised Code:

"(3) 'Employee' means an individual employed by an (any) employer but does not include any individual employed in the domestic service of any person."

Since, by express language, neither definition applies to claims brought pursuant to R.C. 4101.17, we decline to apply either to Kurtz's claim. The first assignment of error is well taken.

In his second assignment Kurtz challenges the trial court's grant of summary judgment on his claims for intentional and negligent infliction of emotional distress.

Kurtz alleged that 'he suffered debilitating emotional distress caused by HBJ's wrongful discharge. He posits that a material issue of fact remains as to the extent of his emotional injuries.

A former employee may recover damages against an employer for the intentional or negligent infliction of emotional distress. *Foster v. McDevitt* (1986), 31 Ohio App. 3d 237; *Hines v. Center for Human Services* (June 16, 1988), Cuyahoga App. No. 54021, unreported. To establish a claim for tortious infliction of emotional distress, an employee must establish that the employer, by "extreme and outrageous conduct," intentionally, recklessly or negligently caused him severe emotional distress. *Yeager v. Local Union 20* (1983), 6 Ohio St. 3d 369, syllabus;

*Schultz v. Barberton Glass Co.* (1983), 4 Ohio St. 3d 131; *Hines, supra.* See, also, *Paugh v. Hanks* (1983), 6 Ohio St. 3d 72. Though such a cause of action may be stated without the manifestation of a contemporaneous physical injury, the Supreme Court has emphasized that the alleged emotional distress must be "serious." *Paugh, supra.* The injury must go beyond "*** trifling mental disturbance, mere upset or hurt feelings." *Id.* at 78. A serious emotional injury may be found "*** where a reasonable person normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* A trial court may determine whether a complainant has stated a cause of action for tortious emotional distress by ruling whether the emotional injury alleged is serious as a matter of law. *Id.*

On deposition Kurtz developed the extent of the mental and emotional distress which he linked to his discharge. He explained that he worried about his future and caring for his family, that he was upset and "just couldn't believe" he had been let go. Kurtz acknowledged that he resolved these concerns without the aid of psychological or medical assistance.

Based upon these undisputed facts, the trial court properly concluded that Kurtz did not sustain a serious, severe and debilitating mental injury which would entitle him to redress, as a matter of law.

Summary judgment on these claims was proper.

The second assignment of error fails.

In his third assignment Kurtz maintains the trial court erred when it struck his jury demand.

He claims that the court improperly struck his jury demand on the claim for damages under R.C. 4101.17 because he sought money damages rather than equitable relief.

An age-discrimination suit brought "*** pursuant to R.C. 4101.17 is not an action for money where the claim is an ordinary debt." *Hoops v. United Tel. Co. of Ohio* (1990), 50 Ohio St. 3d 97, 99. The legislature enacted R. C. 4101.17(B) to provide equitable relief, not legal damages. *Id.* In *Hoops, supra,* the Supreme Court rejected the argument that a claim for money damages entitles a claimant to a jury trial in a R.C. 4101.17 cause.

"*** The right of trial by jury has uniformly been recognized and enforced in this state in actions for money, where the claim is an ordinary debt, but it is equally well recognized that many special proceedings for the enforcement of a moral duty, where the payment of money is the ultimate relief granted, does [*sic*] not entitle the parties to a jury trial. Nearly all alimony proceedings are for the recovery of money, and an order of payment of money either in bulk or in installments is usually granted. No one would contend that a jury trial was guaranteed in that character of cases. ***" *Id.,* quoting *Belding v. State, ex rel. Heifner* (1929), 121 Ohio St. 393, (emphasis *sic*).

Furthermore, R.C. 4101.17 is a statutory proceeding, unknown at common law, which specifically provides equitable relief for which a jury trial is unavailable. *Id.* at 101. The *Hoops* court emphasized that the plain language of R.C. 4101.17(B) provides that "the court" shall determine whether an employer has discriminated on the basis of age and it shall determine the appropriate remedy. The court refused to interpret the term "court" as encompassing a jury. *Id.* Thus, we hold that the trial court properly struck Kurtz's jury demand on the age discrimination claim.

Kurtz also maintained entitlement to a jury trial on his claims for tortious infliction of mental distress. Since we have already determined that the emotional distress claims were properly adjudicated by summary judgment, this claim is now moot.

Assuming, *arguendo,* that Kurtz's mental distress claims were viable, his argument is persuasive. These claims sought recovery of money damages for tortious infliction of mental injury. Claims for negligence and personal injury are recognized as actions which entitle a litigant to trial by jury. J. Klein, J. Browne, J. Murtaugh, Ohio Civil Practice (1988), Section T 27.02, at 361. See *Belding, supra.*

The third assignment of error fails for mootness.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded*
*for further proceedings.*

PRYATEL, J., and PARRINO, J., concur.

Sitting by assignment, Judge August Pryatel, retired from the Eighth District Court of Appeals.

Sitting by assignment, Judge Thomas J. Parrino, retired from the Eighth District Court of Appeals.

## APPENDIX

Appellant's assignments of error are:

### I

"The trial court erred in granting defendant's motion for summary judgment because the totality of the circumstances do not support the finding that plaintiff was an independent contractor rather than an employee."

### II

"The trial court erred in granting defendants' motions for summary judgment because the record contains genuine issues of material fact as to whether plaintiff's termination caused emotional distress sufficient to support a claim for the infliction of serious emotional distress."

### III

"The trial court erred in granting defendants' motion to strike plaintiff's jury trial demand because plaintiff has pleaded causes of action for the recovery of money."