## Belfance v. Standard Oil
*[Cite as 8 AOA 433]*

*Case No. 14688*
*Summit County, (9th)*
*Decided December 12, 1990*

*Joseph F. Hutchinson, Jr. and Clair E. Dickinson, Attorneys at Law, 500 First Nat'l. Tower, Akron, Ohio 44308, for Plaintiff.*

*William M. Oldham and Scott E. Allbery, Attorneys at Law, 50 S. Main St., P. O. Box 1500, Akron, Ohio 44309, for Defendants.*

REECE, P. J.

Kathryn A. Belfance, bankruptcy trustee for the estate of Eugene Stone Trucking, Inc. (Stone), appeals from the decision of the trial court granting summary judgment to the Standard Oil Company and its successor, BP Oil Company (Standard Oil), on Stone's nine-count complaint.

## Facts

Eugene Stone, a former employee of Standard Oil, founded Eugene Stone Trucking, Inc in the 1960s. Stone's business essentially consisted of delivery of Standard Oil packaged products to service stations in the northeast quadrant of the United States; Stone supplied tractors and drivers, and Standard Oil supplied trailers.

On December 14, 1981, Stone and Standard Oil entered into two contracts at issue in this appeal: an Ohio Intrastate Transportation Agreement and an Interstate Transportation Agreement (the Agreements). Both contracts provided for an initial term of five years and for annual renewal thereafter, with the following provision:

"This Agreement may be terminated, without cause, either by the carrier or by Sohio at any time during the initial period or thereafter by written notice of termination given by the terminating party to the other party at least thirty (30) days in advance of the effective date of termination, which effective date shall be specified in such notice."

In early 1985, a conflict arose between Wendy L. Hileman, manager of packaged products distribution for Standard Oil, and Daniel S. Schultz, president of Stone, concerning Stone's rates. Stone had requested a rate increase, which Standard Oil rejected, instead suggesting a reduction. Stone eventually agreed to the reduction.

In November 1986, Standard Oil ordered an audit of certain charges being made by Stone. Hileman analyzed the audit and determined that some Stone drivers were submitting excessive billings.

On November 25, 1986, Standard Oil notified Stone by letter of its termination of the Agreements, setting the terminus date at December 26, 1986. Standard Oil did not offer any loads for Stone to haul following the November 25, 1986 termination notice. On July 7, 1987, Stone filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code. On September 29, 1989, Stone's trustee in bankruptcy filed the complaint hereunder.

In its nine-count complaint, Stone alleged that Standard Oil breached the Agreements, forcing Stone into bankruptcy; that Standard Oil breached the Agreements by failing to exercise good faith in giving Stone adequate notice of its intent to terminate; and that Standard Oil's acts in terminating the Agreements were in bad faith, subjecting Standard Oil to liability in tort. Standard Oil denied each of the essential allegations and on March 30, 1990, moved the trial court for summary judgment on Stone's complaint. Both parties fully briefed the issues before the trial court.

The trial court granted Standard Oil's motion for summary judgment by written entry filed June 19, 1990, finding that the Agreements were clear and unambiguous, and that Standard Oil properly terminated the Agreements pursuant to the terms thereof. The court further determined that Standard Oil's alleged lack of good faith and exercise of bad faith was not relevant to its determination, because the contract terms permitted termination "by either party for any reason (or for no reason)[.]"

Stone appeals, asserting two assignments of error. Because the assignments of error are interrelated, and concern the propriety of summary judgment, they are addressed together.

## Assignments of Error

"I. The trial court committed error by determining that there is no genuine issue as to any material fact that certain contract terms contained in the Agreements are clear and unambiguous entitling the defendants to judgment as a matter of law.

"II. The court committed error by holding that a contract can be terminated by either party for any reason without inquiry into the motivation for termination."

Trial and appellate courts apply the same standard in reviewing summary judgment. Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion; if when so viewed reasonable minds can reach but one conclusion, adverse to the party opposing the motion, summary judgment should be rendered. *Delker v. Ohio Edision Co.* (1989), 47 Ohio App. 3d 1, 2, and Civ. R. 56(C).

Stone first argues that the trial court erred by failing to find the language of the Agreements ambiguous and subject to more than one meaning. Stone claims that a viable interpretation of the Agreement provision at issue is that the thirty day notice may be employed either thirty days prior to the end

of the initial five year term or each successive one year renewal term. Standard Oil counters that to interpret the provision according to Stone's rationale would render other portions of the provision meaningless, thus thwarting the intent of the parties and violating a fundamental rule of contract construction.

Construction of a written contract is a matter of law to be determined by the courts. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St. 2d 241, paragraph one of the syllabus. Where a contract is clear and unambiguous, its interpretation may properly be subject to summary judgment; if terms cannot be determined from the four corners of the contract, however, interpretation should be left to the trier of facts. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St. 3d 321, 322.

The trial court in the matter *sub judice* determined as a matter of law that the terms of the Agreements were clear and unambiguous. We have reviewed the entire record before us, including the contracts in question, and agree with this decision.

Stone's suggested interpretation of the duration and termination provision in the Agreements runs contrary to the plain meaning of the terms used therein. The Agreements initially provide that each "shall continue in force for an initial period of five (5) years commencing on the date hereof and from year to year thereafter, unless and until terminated as hereinafter provided."

The Agreements contain two separate termination provisions: the thirty day provision at issue here, and a for-cause provision not at issue. The former directly follows that quoted above: "This Agreement may be terminated, without cause, either by the carrier or by Sohio *at any time during the initial period or thereafter* by written notice of termination given by the terminating party to the other party at least thirty (30) days in advance of the effective date of termination, which effective date shall be specified in such notice." (Emphasis added.)

Stone claims that this should be read as permitting termination of the agreements only at the end of each contract period, requiring a thirty day notice which specifies the termination date as the last day of the current contract period. Such an interpretation ignores some language in the Agreements,

and fails to accord plain meaning to the remainder. The provision permits either party to terminate the Agreements "at any time during the initial period or thereafter" by delivering written notice at least thirty days prior to an indicated effective date. "At any time" is not subject to Stone's claim that termination may only occur at the end of each contract period. The termination provision states that the effective date must be specified in the notice; Stone's interpretation would make this provision surplusage, as the termination date would be the anniversary date of the contract in every event. We find that the contract terms at issue are clear and unambiguous as a matter of law, and that the trial court did not err by reaching this conclusion. Stone's first error assigned is not well taken.

We next consider Stone's argument that the trial court erred by failing to apply the doctrine of implied good faith dealing in contractual relationships to the matter herein.

Stone concedes that neither the General Assembly nor the Ohio Supreme Court have sought to apply the good faith provisions of R.C. 1301.09 or Section 205, Restatement of the Law 2d, Contracts, to a commercial service contract between corporations. Stone relies upon agency, sales and employment contract decisions in urging this court to apply the good faith doctrine to the parties' commercial service relationship. For the reasons below, we decline this invitation.

Longstanding Ohio law holds that there can be no implied covenants in a contract in relation to any matter that is specifically covered by the written terms of the contract itself. *Kachelmacher v. Laird* (1915), 92 Ohio St. 324, paragraph one of the syllabus. Accordingly, the terms of a written contract are to be ascertained from the language of the agreement, and no implication inconsistent with the express terms therein may be inferred. *Blosser v. Enderlin* (1925), 113 Ohio St. 121, paragraph one of the syllabus.

When a written contract is plain and unambiguous, it does not become ambiguous by reason of the fact that its operation will work a hardship on one party and accord advantage to the other. *Ullmann v. May* (1947), 147 Ohio St. 468, paragraph one of the syllabus. In *Ullmann,* an employee-salesman discharged under the terms of his contract sued his former employer for commissions

due, and alleged that his termination was in bad faith and by fraud. The court considered his allegations, but stated that it could not deduce fraud or bad faith from the fact that the employer followed the terms of the [employment] agreement[.]" *Id.* at 476. Although we agree that the Parties to an employment contract are bound towards each other by standards of good faith and fair dealing, see *Conrad v. Wooster Community Hosp.* (Oct. 24, 1990), Wayne App. No. 2553, unreported, citing *Brown v. Otto C. Epp Memorial Hosp.* (1987), 41 Ohio App. 3d 198, 199, and *Firemen's Ins. Co. v. Antol* (1984), 14 Ohio App. 3d 428, 429, we do not find this precedent applicable to a commercial agreement providing services between incorporated entities.

Stone asserts that his bad faith allegation should be cognisable as analogous to agency and Uniform Commercial Code (UCC) cases.

The UCC, codified in Ohio at R.C. Chapters 1301 through 1309, does not govern this case, as we are concerned here with contracts for services, add not for goods. See *Environmental Structures, Inc. v. Montrose Recreation Ctr., Inc.* (Dec. 17, 1975), Summit App. No. 7850, unreported, and *Cavanaugh v. Nationwide Mutual Ins. Co.* (1976), 65 Ohio App. 2d 123. Even if the UCC somehow applied, the obligation of good faith cannot be used in interpreting a contract to override express contract terms. *General Aviation, Inc. v. Cessna Aircraft Co.,* (C.A. 6, 1990), 915 F. 2d 1038, 1041, citing *Grand Light & Supply Co., Inc. v. Honeywell, Inc.* (C.A. 2, 1985), 771 F. 2d 672, 679, and *Cardinal Stone Co., Inc. v. Rival Mfg. Co.* (C.A. 6, 1982), 669 F. 2d 395, 396. In fact, the implied duty of good faith has been limited "to situations where one of the parties lacked good faith at the time he or she bargained for the termination right. If properly bargained for, the right is given full effect and may be exercised for any reason." *Cloverdale Equip. Co. v. Simon Aerials, Inc.* (C.A. 6, 1989), 869 F. 2d 934, 938.

The termination provision in the Agreements authorizes either party to terminate the contracts "without cause. " This not only permits termination for any reason, but also for no reason at all. Moreover, under the foregoing UCC analysis, Stone has not shown a lack of good faith by Standard Oil regarding termination rights at the time the Agree-

ments were executed. Thus, under the UCC Standard Oil is still entitled to judgment as a matter of law.

Standard Oil asserts that *Midwestern Indemn. Co. v. Luft & Assoc. Ins. Agency, Inc.* (Dec. 23, 1987), Franklin App. No. 87AP-541, unreported, relied upon by the court below, holds that Ohio does not recognize the implied covenant of good faith in a contract situation. *Midwestern* concerns the termination of an agency contract by an insurance carrier pursuant to a contract provision authorizing termination by either party upon thirty days written notice. The court determined that Ohio case law "supports the proposition that, where termination of a contract may be done by either party for any reason whatsoever, there will be no inquiring into the motive for termination as it is irrelevant." *Midwestern, supra,* at 4, citing *Cavanaugh, supra,* at 128-130. We are in general agreement with this determination, as an agency relationship is more closely analogous to the facts herein than the employer-employee relationships discussed *supra.*

Stone asserts that the decision in *Preston v. David* (Sept. 21, 1988), Hamilton App. No. C-870579, unreported, in fact recognized an implied covenant of good faith dealing in contracts. In *Preston,* however, one party actively frustrated fulfillment of a condition required to be performed by the other, then argued that the nonfulfillment was sufficient to void the contract. Moreover, Preston is distinguishable because it concerned a contract for sale of a business and its goods, and thus was subject to the UCC analysis we previously found inapplicable to the matter herein. *Preston* simply does not apply.

The trial court did not err by determining that Standard Oil's motivation to terminate the Agreements was not subject to inquiry. Stone's second error assigned is not well taken.

### Conclusion

Based upon the foregoing, the judgment of the trial court is affirmed.

CACIOPPO, J., concurs.

BAIRD, J., dissenting in part.

As to the issue raised in Assignment of Error II, it is my impression that its decision in *Conrad, supra,* aligned this court with what I perceive to be the majority rule, and

the one set forth in the Restatement of the Law 2d, Contracts (1981) 99, Section 205, that every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.

Accordingly, I believe the summary judgment granted herein by the trial court should be reversed.