922 F.2d 756
 HALLANDALE PROFESSIONAL FIRE FIGHTERS LOCAL 2238,
International Association of Fire Fighters,
AFL-CIO, Plaintiffs-Appellees,
v.
CITY OF HALLANDALE, R.J. Intindola, City Manager and Richard
Wroblewski, Personnel Director, Defendants-Appellants.
 No. 89-6225.
 United States Court of Appeals, Eleventh Circuit.
 Jan. 30, 1991.
 
 Richard Kane, Hallandale, Fla., for defendants-appellants.
 Robert A. Sugarman, Miami, Fla., for plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before EDMONDSON and COX, Circuit Judges, and WISDOM*, Senior Circuit Judge.
 EDMONDSON, Circuit Judge:
 
 
 1
 Defendants-appellants City of Hallandale, R.J. Intindola, and Richard Wroblewski (hereinafter collectively called "the City") issued a policy establishing guidelines for criticism of supervisors and other city officials by city employees. After the effective date of the policy but before it had ever been enforced, plaintiff-appellee Hallandale Professional Fire Fighters Local 2238 (hereinafter called "the Union") sued for injunctive relief under 42 U.S.C. Sec. 1983. The Union challenged the policy on its face, claiming that it impermissibly regulated city employees' speech in violation of the first amendment and was void for vagueness in violation of fifth and fourteenth amendment due process guarantees. The district court accepted the Union's claims and permanently enjoined implementation of the policy. Concluding that the questions presented by the Union's complaint are not justiciable, we reverse.
 
 I.
 
 2
 Since 1982 the City has been issuing a series of memorandums reflecting city policies on many subjects. The focus of this appeal is the 98th policy memo in this series: a policy memo establishing guidelines for employee criticism of supervisors and other city officials.[1]
 
 
 3
 The text of the challenged policy is set forth in the Appendix following this opinion. The first two paragraphs of the policy state its general provisions. Paragraph number 1 provides that employees who are wantonly offensive or antagonistic in their criticism, or whose conduct interferes with cooperation or impairs efficiency, are subject to disciplinary action. Paragraph number 2 provides the same for employees who divulge confidential information. The language and thrust of these two provisions are not new; the language is almost identical to that contained in regulations adopted by the local Civil Service Board in 1968.
 
 
 4
 But paragraph number 3 is new. Beginning with the clause "[t]he following are considered to be within the coverage of this policy," it lists examples of specific kinds of employee behavior meant to be covered by the general prohibitions of paragraphs 1 and 2. These examples include: (1) statements which incite others to action which is unlawful or not permitted under an applicable collective bargaining agreement, including calling upon other employees to disobey lawful orders or calling upon public employees to strike, (2) statements made with knowledge or reckless disregard of their falsity, including statements supported only by "unverified hearsay," and (3) statements which are calculated to and do in fact inflame the public. The last line of the policy directs employees with questions regarding it to seek clarification from the Personnel Department.
 
 
 5
 Before the policy had been applied in any instance, the Union brought this facial attack. The district court permanently enjoined implementation of the policy, holding that it was an unconstitutional attempt to regulate protected speech, an unconstitutional prior restraint, and void for vagueness.
 
 II.
 
 6
 This court, like all federal courts, is a court of limited jurisdiction. See U.S. Const. art. III, Sec. 2. As such, its power to review the constitutionality of governmental acts is derived from and limited by its responsibility for resolving concrete disputes brought before it for decision. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803); International Society for Krishna Consciousness of Atlanta v. Eaves, 601 F.2d 809, 817 (5th Cir.1979). Before rendering a decision, therefore, every federal court operates under an independent obligation to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based; and this obligation on the court to examine its own jurisdiction continues at each stage of the proceedings, even if no party raises the jurisdictional issue and both parties are prepared to concede it. FW/PBS, Inc. v. City of Dallas, --- U.S. ----, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).
 
 
 7
 Because the Union's facial attack on the City's policy is anticipatory, it raises serious questions of justiciability. Justiciability--described as "a notably amorphous notion" by the former fifth circuit, Eaves, 601 F.2d at 817--encompasses both constitutional and prudential concerns. The constitutional aspect of the justiciability analysis focuses on whether an actual "case or controversy" as required by Article III is presented, while the prudential part asks whether it is appropriate for this case to be litigated in a federal court by these parties at this time. See Eaves, 601 F.2d at 817 (citing Socialist Labor Party v. Gilligan, 406 U.S. 583, 588-89, 92 S.Ct. 1716, 1719, 32 L.Ed.2d 317 (1972)).
 
 
 8
 In the specific context of the Union's facial challenge to the City's unenforced policy, the justiciability concern chiefly at issue is one of ripeness.[2] And where ripeness is the issue--generally in the context of a facial attack on a statute, ordinance, regulation, or policy, such as here--the general justiciability analysis outlined above takes on a more particularized form consisting of two essential inquiries: Do the conflicting parties present a real, substantial controversy which is definite and concrete rather than hypothetical or abstract? See Babbitt v. United Farm Wkrs. Nat'l Union, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). If so, is the factual record nonetheless too undeveloped to produce a well-reasoned constitutional decision? Id. at 300-01, 99 S.Ct. at 2310.
 
 III.
 
 9
 To establish that a facial challenge to a governmental act presents a real and substantial controversy, a plaintiff must show he has sustained, or is in immediate danger of sustaining, a direct injury as the result of that act.[3] See Babbitt, 442 U.S. at 298, 99 S.Ct. at 2308; Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). The injury requirement is most loosely applied--particularly in terms of how directly the injury must result from the challenged governmental action--where first amendment rights are involved, because of the fear that free speech will be chilled even before the law, regulation, or policy is enforced. See Solomon v. City of Gainesville, 763 F.2d 1212 (11th Cir.1985); Eaves, 601 F.2d 809 (5th Cir.1979) (both allowing pre-enforcement challenges to local ordinances based on first amendment). But even in a first amendment context the injury-to-the-plaintiff requirement cannot be ignored. See, e.g., Laird, 408 U.S. 1, 92 S.Ct. 2318; United Public Workers of Am. (C.I.O.) v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947) (both concluding that facial challenges to governmental actions were not justiciable because injuries alleged were too speculative, even though core first amendment values--that is, political speech and conduct--were involved).[4]
 
 IV.
 
 10
 The plaintiff Union has not demonstrated concrete injury, either actual or impending, caused by the City's policy. The closest plaintiff has come to doing so is the bald assertion in its complaint that the mere existence of the policy regarding employee criticism "has a chilling effect on the freedom of speech rights of those City of Hallandale employees represented by Plaintiff."
 
 
 11
 The Supreme Court has said, however, that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird, 408 U.S. at 13-14, 92 S.Ct. at 2325-26. The Union tries to distinguish Laird: the plaintiff in Laird alleged a chill arising out of the surveillance activities of a government agency rather than out of an exercise of governmental power which was "regulatory, proscriptive, or compulsory in nature." See id. at 11, 92 S.Ct. at 2324-25. Assuming for the sake of argument that the City's policy on permissible employee criticism is "regulatory, proscriptive, or compulsory in nature," we cannot accept the proposition that this characteristic of the policy alone could establish an "objective" chill sufficient to meet the actual or impending injury-to-plaintiff requirement. While the Laird Court did point out that the nature of the challenged governmental action at issue in that case--that is, general surveillance activities of the governmental agency rather than regulations or laws--differed from that in which questions of ripeness and chill generally arise, id., nothing in that case states or implies that, if the governmental action is "regulatory, proscriptive, or compulsory in nature," the requirement of alleging a specific harm is either negated or automatically satisfied. The Laird Court actually went on to cite Mitchell--a decision disallowing a facial attack by public employees on the Hatch Act, which is clearly regulatory, proscriptive, and compulsory in nature--for the proposition that a claim of specific harm is necessary. See Laird, 408 U.S. at 13-14, 92 S.Ct. at 2325-26 (citing Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564).
 
 
 12
 The Union essentially contends that regulatory, proscriptive, or compulsory governmental action which may have some chilling effect on the exercise of first amendment rights must be open to facial attack regardless of harm. To support this contention, the Union relies heavily on Solomon, 763 F.2d 1212, and Eaves, 601 F.2d 809, the Eleventh and former Fifth Circuit cases cited above for the proposition that the injury-to-plaintiff requirement is most loosely applied where first amendment rights are involved.
 
 
 13
 Solomon and Eaves both allowed facial attacks on local ordinances of general application by plaintiffs against whom the ordinances had not been enforced. The fact that Solomon and Eaves involved ordinances of general application rather than a public employee policy probably produced a more lax application of the injury requirement than would be appropriate in this case.[5] Even beyond this distinction, moreover, the positions of the plaintiffs in Solomon and Eaves were materially different from the position of the Union here; and an examination of these distinctions helps to demonstrate why the Union's claims are nonjusticiable. In Solomon, the defendant city had an ordinance prohibiting public signs of an "indecent or immoral nature," and the plaintiff pizza parlor had a sign above the restaurant depicting a modified version of Leonardo da Vinci's illustration "Proportions of the Human Figure." City officials sent the pizza parlor letters of violation stating that the sign was in violation of the ordinance and had to be removed, but the city then decided not to prosecute. In Eaves, the plaintiff religious group wanted to proselytize actively and to solicit donations at the Atlanta airport. The city had an ordinance that allowed the group to proselytize and to solicit with a permit, but limited the location and manner in which it could do so. Once the ordinance went into effect, the members of the religious group conformed their activities to its requirements so they would not lose their permit.
 
 
 14
 Like the City of Hallandale's policy regarding permissible employee criticism, the local ordinances in Solomon and Eaves were challenged on first amendment grounds before they had been enforced against the challenger. Beyond this, however, the similarity ends; in both Solomon and Eaves the plaintiffs definitely and seriously wanted to pursue a specific course of action which they knew was at least arguably forbidden by the pertinent law. In Solomon, the plaintiff wanted to display (and in fact was already displaying) his sign, and he had been told the ordinance forbade it. All that remained between the plaintiff and the impending harm was the defendant's discretionary decision--which could be changed--to withhold prosecution. In Eaves, the plaintiffs wanted to approach passers-by as they had before the passage of the applicable Atlanta ordinance and as they continued to do in other airports throughout the country, but this would have arguably violated the ordinance. All that stood between the Eaves plaintiffs and impending harm was their choice to modify their behavior to conform. The group's desire and intent to engage in the prohibited behavior was specific, serious, and plausible, based on the members' past conduct in Atlanta and their current patterns of conduct in other locations. Thus, despite the absence of enforcement, both of these cases presented an impending injury and a resulting concrete controversy.
 
 
 15
 The definiteness of a controversy is important, and it is missing here. The Union, in its complaint, never says that its members intend to violate the policy or to behave in a way that would arguably violate the policy. More important, the Union tells us nothing specifically about what it is that its members might want to do or say that might be protected by the first amendment but might be chilled by the existence of the City's policy. We are left to hypothesize and to speculate about possible harms that might or might not occur, and this we cannot do. As the Mitchell Court wrote in the context of disallowing a facial challenge by federal employees and their union to the Hatch Act, a law forbidding federal employees from actively participating in political campaigns:
 
 
 16
 The power of courts, and ultimately of this Court, to pass upon the constitutionality of acts of [government] arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough. We can only speculate as to the kinds of political activity the appellants desire to engage in or as to the contents of their proposed public statements or the circumstances of their publication. It would not accord with judicial responsibility to adjudge, in a matter involving constitutionality, between the freedom of the individual and the requirements of public order except when definite rights appear upon the one side and definite prejudicial interferences upon the other.
 
 
 17
 Mitchell, 330 U.S. at 89-90, 67 S.Ct. at 564 (emphasis added). As in Mitchell, the Union's complaint below presented no justiciable case or controversy. Thus, the district court had no jurisdiction to grant injunctive relief.
 
 V.
 
 18
 The district court found the Union's challenge justiciable because the City's policy gave some city official or department too much discretion to determine what employee behavior was or was not permissible, and--as the district court understood the law--in the first amendment area facial challenges are permitted whenever there is excessive discretion " 'because the mere existence of such discretion is unconstitutional.' " District court order, pp. 6-7 (quoting Beckerman v. City of Tupelo, Mississippi, 664 F.2d 502, 506 (5th Cir. Unit A 1981)). But the cases cited to support this proposition involve a different question than that facing us, because they deal with prior restraint on speech caused by advance licensing or permitting requirements.[6] See, e.g., Hynes v. Mayor of Oradell, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976) (invalidating ordinance requiring door-to-door canvassers to get permit from police department in advance). The district court's quote from Beckerman comes, in fact, from a full sentence which states: "In the case of a licensing statute containing allegedly excessive discretion, facial challenges are permitted because the mere existence of such discretion is unconstitutional." Beckerman, 664 F.2d at 506. In addition, all of these cases--like Solomon and Eaves, but unlike the dispute between the Union and the City here--presented a concrete adverseness of interests: in each, the plaintiff seriously and plausibly wanted to engage in specific conduct or speech which was arguably prevented or made more difficult by the challenged governmental action. See, e.g., Hynes, 425 U.S. at 614-15, 96 S.Ct. at 1758 (facial challenge brought by political candidate and other voters who wanted to canvas door-to-door without going through process of getting permit). Moreover, the district court's analysis never focused on the fact that the City policy governed an employer-employee relationship rather than the rights of the general public; employers are allowed considerable discretion in dealing with their employees.
 
 VI.
 
 19
 Our conclusion that the Union's claims present no justiciable "case or controversy" as required by Article III is further confirmed by a look beyond constitutional requirements to prudential concerns. The factual record before us is too undeveloped to produce a well-reasoned decision on the constitutionality of this City policy, especially in the context of an employee's rights of expression. A factual context is always helpful to the court, but the degree to which it is absolutely necessary will depend on the fact specificity of the particular analysis involved.
 
 
 20
 Both sides suggest that Connick-Pickering analysis should be utilized here. See generally Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The Connick-Pickering analysis of first amendment rights of public employees is extremely fact specific. See Dartland v. Metropolitan Dade County, 866 F.2d 1321, 1323-24 (11th Cir.1989). The court first looks at the particular employee speech involved to determine whether it constitutes speech on a "matter of public concern." Connick, 461 U.S. at 146-47, 103 S.Ct. at 1690. If not, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Id. If the speech does address a matter of public concern, the court then applies a balancing test, weighing the employee's first amendment interests against the interest of the public entity, as employer, in promoting the efficiency of the public services it performs. See Pickering, 391 U.S. at 568, 88 S.Ct. at 1734-35; Bryson v. City of Waycross, 888 F.2d 1562, 1565-67 (11th Cir.1989). This balancing is fact specific, focusing both on the nature of the employee's speech at issue and the nature and extent of the disruption it causes. See Bryson, 888 F.2d at 1565-67. As the Eighth Circuit has concluded when faced with a facial challenge to a public employee policy in a context very similar to that presented here: "To properly strike such a delicate balance requires that the competing interests be crystallized into a form more cognizable for decision than that now before us." Vorbeck v. Schnicker, 660 F.2d 1260 (8th Cir.1981).
 
 VII.
 
 21
 For these reasons, we conclude that the Union's complaint presents no controversy ripe for judicial review.[7] The district court's judgment granting injunctive relief is therefore REVERSED.
 
 APPENDIX
 POLICY/PROCEDURES
 
 22
 1. Employees who are wantonly offensive or are antagonistic toward supervisors and fellow officers, criticizing orders, rules or policies, or whose conduct interferes with the proper cooperation of employees or impairs the efficiency of the public service are subject to disciplinary action.
 
 
 23
 2. Employees who divulge information which is confidential under an applicable rule, ordinance or statute are subject to discipline.
 
 
 24
 3. The following are considered to be within the coverage of this policy:
 
 
 25
 a. Statements which incite others to action which is unlawful or not permitted by an applicable collective bargaining agreement. These include statements calling upon other employees to disobey lawful orders or calling upon public employees to strike.
 
 
 26
 b. Statements which are made knowing of their falsity or with reckless disregard of their falsity. These include statements supported only by unverified hearsay.
 
 
 27
 c. Statements which divulge information which is confidential under departmental rules, civil service rules, ordinances or statutes.
 
 
 28
 d. Statements which in fact impair the efficient administration of an employee's department or disrupt the employee's working relationships within that department.
 
 
 29
 e. Statements which are calculated to and in fact inflame the public.
 
 
 30
 4. Employees shall familiarize themselves with this policy and department heads are hereby directed to circulate the same to employees within their respective departments.
 
 
 31
 ADDITIONAL INFORMATION, REQUIREMENTS AND RESPONSIBILITIES
 
 
 32
 If there are questions relative to this policy, contact the Personnel Department for clarification.
 
 
 
 *
 Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 This memo was issued a week before a municipal election and shortly after firemen participated in public debate at several meetings attended by candidates for the city commission. Nothing in the record, however, indicates that this participation, if it had occurred after policy 98 was adopted, would violate the policy; nor are there statements in the record that firemen intend to participate in the same way in the future
 
 
 [2]
 Assuming the controversy were otherwise justiciable, the Union would seem to have standing to bring claims on behalf of its members. See International Union, United Auto., Aerospace and Agric. Implement Wkrs. of Am. v. Brock, 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986)
 
 
 [3]
 Because both standing and ripeness analyses look to the existence of actual injury to the plaintiff caused by the alleged wrong, they overlap to some degree and often collapse into each other. Standing may be distinguished from ripeness, however, because where standing is at issue the question regarding the existence of an actual injury arises from the identity of the parties rather than--as here--the non-occurrence of events in the causal chain which may or may not occur. See generally L. Brilmayer, "The Jurisprudence of Article III," 93 Harv.L.Rev. 297, 298-99 (1979)
 
 
 [4]
 Appellee Union cites several cases for the proposition that an actual or impending injury is not required where a governmental act is challenged on grounds of overbreadth. See e.g., Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). As an initial observation, we note that the Union did not challenge the city ordinance on grounds of overbreadth. And we do not accept the contention that vagueness and overbreadth are synonymous: vagueness is based on due process, and overbreadth is part of first amendment doctrine. Yet assuming for the sake of argument that the overbreadth cases would apply equally to an attack based on vagueness, our conclusion would be the same. It is important to recognize the exact nature of the injury requirement the overbreadth cases address: they are about the standing aspect of justiciability, not ripeness. These cases do not stand for the proposition that no actual or impending injury is necessary; instead, they say that this plaintiff may be allowed to launch the attack even though he is not, or will not be, the one suffering the actual or impending injury. See Broadrick, 413 U.S. at 611-12, 93 S.Ct. at 2915-16
 
 
 [5]
 The realm of protected speech and conduct for public employees is much narrower than that for the general public. See Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). And we believe the case law shows this narrowness affects the question of justiciability as well as the question of merit in cases that are justiciable. E.g., United Public Workers of Am. (C.I.O.) v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); cf. Broadrick v. Oklahoma, 413 U.S. 601, 613, 615, 93 S.Ct. 2908, 2916, 2917-18, 37 L.Ed.2d 830 (1973). Put differently, the broader the first amendment right and, therefore, the more likely it is that a governmental act will impinge on the first amendment, the more likely it is that the courts will find a justiciable case when confronted with a challenge to the governmental act. E.g., Solomon, 763 F.2d 1212; Eaves, 601 F.2d 809 (both allowing facial attacks on ordinances of general application). But when the right is narrow--as is true in the case of government employees--and the challenged governmental act by its terms applies to many circumstances to which it could be applied validly, courts apply justiciability requirements more vigorously. See e.g., Mitchell, 330 U.S. at 86-91, 67 S.Ct. at 563-65. Because employment policies do not apply to the general public and because--given Connick and Pickering--government employers can lawfully regulate their employees' speech to a significant degree, justiciability is a tougher problem to overcome in the public employment context than might be the case in other first amendment cases; and the employee must focus more on the speech or conduct that he genuinely wishes to undertake
 
 
 [6]
 Stressing the distinction between before-the-fact prohibitions and after-the-fact sanctions in the context of a facial challenge to a fire department regulation similar to that presented here, the Fifth Circuit has explained:
 The difference is crucial. The great evil of a prior restraint is that it prevents the public from receiving the information possessed by the gagged speaker, and so from judging the information's worth and the speaker's case. If a sanction is instead applied after-the-fact, angry voters may vindicate the speaker's rights, by removing from office those who imposed the sanction. Prior restraints are constitutionally suspect because they deprive speakers of recourse to the people, who are inevitably the ultimate, and the most important, protector of justice in American politics.
 Moore v. City of Kilgore, 877 F.2d 364, 392-93 (5th Cir.1989).
 Like the regulation in Moore, the City of Hallandale policy is not subject to facial challenge as a prior restraint.
 
 
 [7]
 Our decision that the Union's claims are now nonjusticiable does not mean that employees must wait until after they are to be disciplined under the policy to challenge it in federal court. As Solomon and Eaves demonstrate, indirect injury, in the absence of enforcement, may be sufficient to establish a justiciable controversy, as long as that indirect injury is specific. For example, if an employee has a concrete and plausible desire to say something in particular and refrains from doing so because the statement arguably violates the policy, he may have the ingredients for a ripe, justiciable dispute