James G. JACKSON, Plaintiff,

v.

CITY OF COLUMBUS,
et al., Defendants.

No. C2–97–1113.

United States District Court,
S.D. Ohio,
Eastern Division.

July 28, 1998.

---

844

William C. Wilkinson, Thompson, Hine & Flory, Columbus, OH, for plaintiff.

Defendant City of Columbus, Glenn S. Redick, Assistant City Attorney, Columbus, OH, Defendant Gregory Lashutka, John R. Gall, Squire Sanders & Dempsey, Columbus, OH, Defendant Thomas W. Rice, Sr., Kathleen M. Trafford, Columbus, OH, for defendants.

## OPINION AND ORDER

GRAHAM, District Judge.

This is an action filed by plaintiff James G. Jackson, Chief of the Columbus, Ohio Division of Police, against the city of Columbus, Ohio, Gregory S. Lashutka, Mayor of the city of Columbus, and Thomas W. Rice, Sr., Director of Public Safety. Plaintiff alleges that the defendants deprived him of various constitutional rights during the course of a mayoral investigation into allegations of misconduct on the part of plaintiff in violation of 42 U.S.C. § 1983, § 1985(3) and the First and Fourteenth Amendments of the United States Constitution. Plaintiff, who is African–American, further alleges that the defendants discriminated against him on the basis of race in matters relating to the terms and conditions of his employment in violation of 42 U.S.C. § 1981. Plaintiff also asserts claims under the Ohio Constitution, Ohio Revised Code Chapter 4112 and Ohio tort law.

This matter is before the court on the motions of the defendants to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim for which relief may be granted. A complaint may be dismissed for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697 (6th Cir.1978).

A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 88 (6th Cir.1997). The court is not required to accept as true unwarranted legal conclusions or factual inferences.

*Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir.1987).

## I. Consideration of Exhibits.

■■■ The first issue before the court is whether certain documents attached to defendant Rice's motion to dismiss may be considered in ruling on the motions to dismiss. As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed.R.Civ.P. 56. *Weiner,* 108 F.3d at 88. However, there are exceptions to this rule. Documents attached to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.* at 89; *Branch v. Tunnell,* 14 F.3d 449, 453–454 (9th Cir.1994)(deposition and affidavit properly considered where complaint refers to document and authenticity of exhibits is not questioned); *Teagardener v. Republic–Franklin Inc. Pension Plan,* 909 F.2d 947 (6th Cir.1990)(pension plan properly considered). A court may consider an undisputedly authentic document attached to a motion to dismiss if plaintiff's claims are based on the document. *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993).

■■■ Courts may also consider public records, including court records in related cases, *see In Re American Continental Corp./Lincoln Sav. & Loan Securities Litigation,* 102 F.3d 1524 (9th Cir.1996) *rev'd on other grounds sub nom. Lexecon Inc. v. Milberg Weiss Bershad Hynes and Lerach,* 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998); *Henson v. CSC Credit Services,* 29 F.3d 280 (7th Cir.1994); or letter decisions of government agencies and published reports of administrative bodies, *see White Consolidated Industries,* 998 F.2d at 1197; *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986). Courts may also consider matters of which they may take judicial notice.

*Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1018 (5th Cir.1996) (citing Fed. R.Evid. 201(f): "Judicial notice may be taken at any stage of the proceeding.")

■■■ The above exceptions for documents of undisputed authenticity, official public records, documents central to plaintiff's claim, or documents sufficiently referred to in the complaint are recognized because in such cases, the problem of lack of notice to the plaintiff is abated and the necessity for the conversion of the motion to dismiss into one for summary judgment is dissipated. *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993).

■■■ Exhibit 1 to defendant Rice's motion to dismiss is the December 30, 1996 decision of the Columbus Municipal Civil Service Commission. This decision is a matter of public record and was referred to in plaintiff's amended complaint, and this document may properly be considered a part of the pleadings. Exhibit 6 is a copy of the Rules and Regulations of the Municipal Civil Service Commission, of which this court may take judicial notice. Exhibit 7 is a petition for writ of mandamus filed by plaintiff in the Franklin County Court of Appeals. It is a public record in a related case which may be considered on a motion to dismiss. Exhibit 9 is a letter which is also attached to the amended complaint as Exhibit A, and it is therefore properly before the court. The court will not consider Exhibits 2 through 5, 8 and 10, as these exhibits have not been sufficiently authenticated or shown to be public records.

## II. Summary of Claims.

Plaintiff alleges in his amended complaint that on October 10, 1996, he was suspended from his position and reassigned to his home pending a mayoral investigation into allegations of misconduct on his part. Plaintiff alleges that following this suspension, Deputy Chief Kern, who is white, was appointed by defendant Rice as acting Chief of Police. Plaintiff contends

that defendants Rice and Lashutka conspired to remove plaintiff from his position because of plaintiff's race, African–American. Plaintiff further alleges that he was instructed in letters from defendant Rice dated October 10, 1996 (the so-called "gag" and "banishment" orders) not to discuss the investigation with the media and not to enter his office or any city facilities while the investigation was pending. Plaintiff alleges that he was instructed not to talk to the media because defendant Rice did not want plaintiff to raise the issue of his race during the investigation. Plaintiff further alleges that following his suspension, his office was searched.

Plaintiff further alleges that after being advised by City Attorney Ron O'Brien that the plaintiff's reassignment to his residence constituted a "suspension" which triggered the requirement for referring charges to the Civil Service Commission, defendant Rice advised plaintiff by letter dated October 14, 1996 that he was being assigned to perform his duties as Chief of Police at the administrative offices of the Columbus Division of Fire. Plaintiff was instructed in this letter not to enter any police facilities without the prior approval of defendant Rice.

The amended complaint further indicates that after October 10, 1996, plaintiff used his accrued vacation time while contesting defendants' actions. On November 29, 1996, plaintiff was formally suspended for alleged incompetence, gross neglect of duty or other just cause for violation of the laws of the state of Ohio, the city of Columbus, and the rules of the Columbus Division of Police, Department of Public Safety. Pursuant to Section 107 of the Columbus City Charter and Rule XIII of the Columbus Municipal Civil Service Commission, a number of charges were referred to the Commission for review. These allegations included plaintiff's failure to impose fair discipline in the case of Commander Walter Burns regarding Burns's handling of a prostitution investigation, plaintiff's failure to efficiently man-

age the operations of the vice bureau, plaintiff's failure to maintain police records concerning a homicide investigation and the Burns prostitution investigation, plaintiff's use of his position to influence hiring decisions for friends and family, and plaintiff's failure to protect the integrity of the division of police. On December 30, 1996, the Commission rendered a decision finding that two of the charges against plaintiff had been proved, and dismissing the remainder of the charges. The Commission sustained Charge I, concerning plaintiff's deviation from disciplinary procedures in the investigation into Commander Burns's conduct, and Charge II, Specification 1, relating to the destruction of police records in a homicide investigation. The Commission imposed a sanction of a five-day suspension without pay or the forfeiture of five vacation days on these two charges. Plaintiff does not challenge the November 29, 1996 suspension or the decision of the Commission.

Plaintiff further alleges that on July 1, 1997, defendant Rice published a draft investigative report which allegedly contained false and defamatory statements about the plaintiff. Plaintiff contends that defendant Lashutka publicly accepted this report in its entirety.

Plaintiff contends that the October 10, 1996 suspension was unlawful under the Columbus City Charter. Plaintiff alleges that the October 10, 1996 suspension, gag and banishment orders and the 1997 report violated his procedural and substantive due process rights and constituted defamation and invasion of privacy under Ohio law. Plaintiff also asserts a claim for intentional infliction of emotional distress. Plaintiff further alleges that the defendants acted and conspired to force him from office on the basis of his race in violation of the Equal Protection Clause, 42 U.S.C. §§ 1981 and 1985(3), 1983,, and Ohio Revised Code Chapter 4112. Plaintiff also contends that the acts of the defendants violated his rights under Article

I, Sections 1, 2, 3, 11, 14 and 16 of the Ohio Constitution.

Plaintiff contends that the gag and banishment orders violated § 1983 by infringing on his right of free speech and his right to petition the government for redress protected under the First Amendment of the United States Constitution, and his rights to procedural and substantive due process and equal protection of the laws protected under the Fourteenth Amendment of the United States Constitution. Plaintiff further alleges that the 1997 report contains defamatory matter and was issued in retaliation for plaintiff's expressed intention to file a legal action asserting the claims set forth in the amended complaint, contrary to plaintiff's rights under the First and Fourteenth Amendments, in violation of § 1983 and Chapter 4112. Plaintiff seeks injunctive and declaratory relief and monetary damages.

## III. Standards for Qualified Immunity Defense.

Defendants Lashutka and Rice have been named as defendants in both their official and individual capacities. In their individual capacities, these defendants in their motions to dismiss have asserted qualified immunity as a defense to plaintiff's civil rights claims. Plaintiff filed his first amended complaint almost four months after the qualified immunity defense was raised by motion to dismiss.

Under the qualified immunity doctrine outlined in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), government officials are immune from liability for civil rights damages insofar as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The qualified immunity defense has been applied to claims under 42 U.S.C. §§ 1981, 1983, and 1985(3). *See Vaughn v. United States Small Business Admin.*, 65 F.3d 1322 (6th Cir.1995);

*Johnson v. Estate of Laccheo*, 935 F.2d 109 (6th Cir.1991).

The focus of the qualified immunity analysis is on the objective reasonableness of the official's conduct as measured by reference to clearly established law and the information which the official possessed. *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727; *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The official's subjective state of mind is irrelevant. *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The question of whether a defendant is entitled to qualified immunity is one of law for the court. *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir.1987).

The plaintiff must make out a violation of a clearly established constitutional right, and whether plaintiff has done so is a question of law for the court. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). For the constitutional right to be clearly established, the law must be clear in regard to the official's particular actions in the particular situation. *Walton v. City of Southfield*, 995 F.2d 1331, 1335 (6th Cir.1993). The conduct of the official must fall clearly within the area protected by the constitutional right, such that a reasonable official would have known that his conduct violated the constitutional right. *Long v. Norris*, 929 F.2d 1111, 1115 (6th Cir.1991). The official is entitled to immunity where he reasonably could have thought that his actions were consistent with the rights allegedly violated. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988).

Where the defense of qualified immunity is asserted in a motion to dismiss, the plaintiff is required to respond to that defense with "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Veney v. Hogan*, 70 F.3d 917, 921–922 (6th Cir.1995). Plaintiff must do more than make vague and conclusory

allegations of discrimination. *Vaughn*, 65 F.3d at 1327. Rather, some factual basis for plaintiff's claims must be set forth in the pleadings. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986). If this pleading burden is not carried out by the plaintiff in the original complaint or in a supplemental pleading, dismissal is proper. *Cameron v. Seitz*, 38 F.3d 264, 273 n. 2 (6th Cir.1994).

## IV. Federal Claims.

### A. First Amendment—Freedom of Speech.

Plaintiff alleges that the defendants violated his First Amendment rights of free speech in imposing the gag order. Under the gag order, plaintiff was forbidden to speak with the news media about the investigation into his alleged misconduct in office while the investigation was pending.

■■■■ The government as employer has far broader powers than the government as sovereign in regulating the speech of its employees. *Waters v. Churchill*, 511 U.S. 661, 671, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994). In *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court adopted a balancing test which weighs the interests of the employee as a citizen in commenting on matters of public concern against the interest of the governmental entity as employer in promoting the efficiency of the public services it performs through its employees. This balancing test is applied only when the employee speaks as a citizen about matters of public concern rather than as an employee upon matters only of personal interest. *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Whether a plaintiff's speech addresses a matter of public concern is a question of law. *Rahn v. Drake Center, Inc.*, 31 F.3d 407, 411 (6th Cir.1994). The determination of whether a statement addresses a matter of public concern must be based on the content, form, and context of the statement. *Con-*

*nick*, 461 U.S. at 146–148, 103 S.Ct. 1684. Where the speech involves a matter of public concern, the governmental entity must show why the restriction on speech is justified. *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

The *Pickering* balancing test has been applied not only to cases where an employee has suffered an adverse job action as a result of his speech, but also in cases where an employer's policy regarding employee speech is alleged to constitute a prior restraint having a "chilling effect" on employee speech. *See, e.g., Weaver v. U.S. Information Agency*, 87 F.3d 1429 (D.C.Cir.1996); *Port Authority Police Benevolent Ass'n, Inc. v. Port Authority of New York and New Jersey Police Department*, 973 F.2d 169 (3d Cir.1992); *Zook v. Brown*, 865 F.2d 887 (7th Cir.1989).

■■■ Plaintiff has alleged in his amended complaint that the gag order was imposed by the defendants. However, the amended complaint is completely devoid of any allegations as to whether plaintiff would have made statements to the media concerning the investigation if the gag order were not in place, or what those statements would have been. Mere speculation concerning whether plaintiff would have made statements concerning the investigation or what statements plaintiff would have made but for the order is not sufficient to plead a case or controversy under the First Amendment. *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756 (11th Cir.1991) (no case or controversy alleged where the complaint lacked assertions that union members intended to violate city policy prohibiting criticism of supervisors).

■■■■ The mere fact that an order was entered which would potentially restrain speech is not sufficient to state a claim under § 1983. To make out a claim under § 1983, a plaintiff must establish that the conduct of the defendants deprived him of rights, privileges, or immuni-

ties secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). A plaintiff must show that he has sustained direct injury as the result of the government action, and this injury requirement is not ignored in the First Amendment context. *City of Hallandale*, 922 F.2d at 760. A bald assertion that speech was chilled by a governmental policy is not sufficient. *Id.* at 761.

The allegations in the complaint are also insufficient to indicate that plaintiff was impeded from commenting on a matter of public interest. Even assuming, though he does not so contend in the amended complaint, that plaintiff would have stated that the acts of the defendants in ordering the investigation were racially motivated, the mere fact that an employee is alleging discrimination on the part of his public employer is not sufficient to transform the employee's dispute with the employer into a matter of public concern. *Rice v. Ohio Department of Transportation*, 887 F.2d 716, 721 (6th Cir.1989). The facts included in the amended complaint show at most the existence of a personal employment dispute between plaintiff and the defendants, not the existence of a broader public controversy.

Since plaintiff has failed to plead that he was impeded from making statements on a matter of public concern, the *Pickering* balancing test does not come into play. However, this court notes that matters are alleged in the complaint which would support the position that the interests of the defendants in promoting the efficiency of public service and the integrity of the investigation warranted restrictions on comments concerning the investigation. Courts have recognized the fact that a police department has a more significant interest than the typical government employer in regulating the speech of its employees to promote efficiency, foster loyalty and obedience, maintain morale within the department, and instill public confidence. *See Tyler v. City of Mountain Home, Arkansas*, 72 F.3d 568, 570 (8th Cir.1995); *Tindle v. Caudell*, 56 F.3d 966, 971 (8th Cir.1995)(noting that since a police department functions as a paramilitary organization charged with maintaining public safety and order, it is given more latitude in implementing personnel regulations). The city of Columbus had an interest in maintaining the integrity and the confidentiality of the investigation of alleged misconduct on the part of plaintiff, the city's highest ranking police official, during the pendency of that investigation. No showing that actual prejudice would result if plaintiff spoke to the media concerning the investigation is required under the *Pickering* balancing test. *Tyler*, 72 F.3d at 570. Under these circumstances, plaintiff's failure to adequately allege that he would have spoken concerning a matter of public concern and to specifically identify what that matter was is particularly significant to demonstrating the existence of a case or controversy under the First Amendment.

Since plaintiff has failed to adequately plead a violation of his right of free speech under the First Amendment, the individual defendants are entitled to qualified immunity on this claim. In addition, plaintiff has not referred this court to any authorities in existence at the time which would clearly have alerted the defendants that their conduct in imposing the gag order would violate plaintiff's First Amendment rights.

**B. First Amendment—Right to Petition.**

Plaintiff alleges in his amended complaint that the October 10th order banning him from all city property resulted in an infringement of his right under the First Amendment to petition the government for redress. Plaintiff alleges that this order continued beyond the October 14th letter, which directed plaintiff not to enter any police department facilities without the prior approval of defendant Rice. The length of the banishment presents a

factual dispute, and for purposes of the motions to dismiss, the court will assume that the banishment extended beyond October 14, 1996.

▇▇▇▇ A cause of action for violation of the Petition Clause is subject to the same analysis applied to a claim arising under the Speech Clause. *Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220, 1226 (6th Cir.1997). The right to petition is limited to matters of public concern. *Id.* The *Pickering* balancing test is also applied to the right to petition claims of public employees. *Id.* at 1227. Therefore, plaintiff's petition claim suffers from the same deficiency as discussed above in relation to his free speech claim.

The amended complaint also lacks any factual allegations suggesting that plaintiff was actually injured by a deprivation of his right to petition. Although the Petition Clause encompasses a right of access to the courts, there are no allegations that plaintiff was hampered in any way in obtaining access to the courts or pursuing the judicial remedies available to him. There are no factual allegations indicating that the prohibition against entering city facilities in any way hampered plaintiff's ability to petition city officials or pursue his administrative remedies.

▇▇▇▇ A plaintiff complaining that he was denied his right to petition to the courts or to other agencies for redress must allege that the process available does not provide fair procedures to remedy the alleged wrong. *Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir.1997). Where a plaintiff was not impeded in exercising the right to use the procedures available to challenge the employer's action, and where the procedures available were adequate to provide for the exercise of plaintiff's due process rights, the plaintiff's right to petition the government for redress is not violated. *Gillard v. Norris*, 857 F.2d 1095, 1101 (6th Cir.1988). Administrative and judicial procedures were available to the plaintiff to contest the defendants' actions. *See* Section IV(C), *infra.* Plaintiff has alleged no facts to show that these procedures were inadequate to redress any alleged improper conduct on the part of the defendants.

▇▇▇▇ Plaintiff has failed to state a claim for a violation of his First Amendment rights to petition the government for redress. The individual defendants are also entitled to qualified immunity on this claim. Plaintiff has referred this court to no cases in existence at the time which would have alerted the defendants that their conduct in precluding plaintiff from entering city facilities would constitute a violation of his First Amendment right to petition government even where plaintiff was not actually precluded from petitioning any court or government official or hampered in his efforts to do so by the banishment order.

### C. Fourteenth Amendment—Procedural Due Process.

▇▇▇▇ Plaintiff alleges that the gag and banishment orders and the October 10th suspension were implemented without affording him procedural due process. The first step in determining whether procedural due process has been denied is to ask "whether there exists a liberty or property interest which has been interfered with" by the defendants. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). First Amendment rights may constitute a liberty interest under the Due Process Clause. However, as discussed *supra*, the amended complaint fails to allege that plaintiff was deprived of any right subject to protection under the First Amendment. The amended complaint fails to identify any property interests which were implicated by the gag and banishment orders, or by the October 10, 1996 suspension, which lasted until October 14, 1996. Plaintiff does not allege that he sustained any loss in pay as a result of these actions.

Even assuming that the amended complaint is sufficient to plead a deprivation of a property or liberty interest, defendants argue that plaintiff's procedural due process claims are barred under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Parratt*, the Supreme Court held that the negligent deprivation of property does not violate due process if adequate state remedies are available to redress the wrong. The *Parratt* doctrine also extends to intentional deprivations of property, *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and to substantive due process claims, *Doherty v. City of Chicago*, 75 F.3d 318 (7th Cir.1996); *Miller v. City of Columbus*, 920 F.Supp. 807, 818 (S.D.Ohio 1996).

▮▮▮▮ A § 1983 plaintiff claiming the deprivation of a property or liberty interest without procedural due process of law must plead and prove that state remedies for redressing the wrong are inadequate. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir.1983). Dismissal of procedural due process claims under *Parratt* based upon the existence of adequate postdeprivation remedies is permissible if: 1) the deprivation was unpredictable or "random"; 2) predeprivation process was impossible or impracticable; and 3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty. *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

Plaintiff has alleged that the defendants were not authorized by law to impose the gag and banishment orders, and that the October 10th suspension was unlawful. Plaintiff further alleges that, to his knowledge, no city employee had ever experienced similar action. Assuming these allegations to be true, this would indicate that the deprivation was unpredictable or random. The facts pleaded in the amended complaint, detailing the actions of the defendants at the commencement of a mayoral investigation, likewise do not suggest that a predeprivation process was practicable under these circumstances. Plaintiff has not pleaded in the amended complaint that his state remedies for redressing these wrongs were inadequate.

Here, plaintiff had adequate postdeprivation remedies. He was free to contest his suspension before the Civil Service Commission. Plaintiff argues that this remedy was not in fact available to him because of the defendants' alleged efforts to disguise his suspension as a "reassignment." However, a similar argument was rejected by the Sixth Circuit in *Collyer v. Darling*, 98 F.3d 211, 225–227 (6th Cir. 1996) (noting that mislabeling of plaintiff's claim would not have precluded his administrative claim).

Plaintiff has maintained that his "reassignment" on October 10th was in fact an illegal suspension. Under Rule XIII(E) of the Commission Rules and Regulations, "an employee who is suspended ... may appeal such decision, order or action to the Commission." Rice Motion to Dismiss, Ex. 6. There is no language in this rule which would limit such appeals to formal suspensions which are certified to the Commission. According to the amended complaint, plaintiff was eventually formally suspended and had a full hearing before the Commission, which ruled on the charges against plaintiff. Plaintiff has not sustained his burden of demonstrating that his administrative remedies were inadequate. *Collyer*, 98 F.3d at 226.

In addition, an action in mandamus pursuant to Ohio Revised Code § 2506.01 was available to plaintiff to challenge the orders of defendant Rice concerning plaintiff's suspension and any restrictions on plaintiff's rights of free speech or petition. In fact, plaintiff filed a mandamus action to contest the validity of his suspension. Rice Motion to Dismiss, Ex. 7. Plaintiff had adequate postdeprivation remedies, and his § 1983 procedural due process allegations do not state a claim for relief.

### D. Fourteenth Amendment—Substantive Due Process.

 Plaintiff alleges that the gag and banishment orders and the October 10th suspension order deprived him of substantive due process. Substantive due process "serves as a vehicle to limit various aspects of potentially oppressive government action." *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir.1996). Substantive due process claims may involve deprivations of a particular constitutional guarantee or actions that "shock the conscience." *Pusey v. City of Youngstown,* 11 F.3d 652, 656 (6th Cir.1993). Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action does not constitute a violation of substantive due process so long as it is rationally related to a legitimate state interest. *Valot v. Southeast Local School Dist. Bd. of Educ.,* 107 F.3d 1220, 1228 (6th Cir.1997).

Defendants argue that plaintiff's substantive due process claims relating to the gag and banishment orders should be analyzed under the First Amendment. In *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the Supreme Court held that a claim of malicious prosecution could not be based upon a substantive due process theory, and must be asserted, if at all, under the Fourth Amendment. The Court in *Albright* noted that "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.,* 510 U.S. at 272, 114 S.Ct. 807. The Court went on to state: "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Id.* at 273, 114 S.Ct. 807 (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Since the *Albright* decision, numerous courts have declined to permit claims to be asserted under a substantive due process theory where the subject matter of the claim fell within a more explicit constitutional guarantee. *See, e.g., Winfield v. Bass,* 106 F.3d 525, 530 n. 2 (4th Cir.1997) (applying Eighth Amendment rather than substantive due process); *Gehl Group v. Koby,* 63 F.3d 1528, 1539 (10th Cir.1995) (claims regarding alleged suppression of protected speech and racially discriminatory animus should be analyzed under explicit guarantees of First Amendment and Equal Protection Clause); *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995) (scope of substantive due process claim alleging restriction of free speech was governed by the First Amendment); *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 46 (1st Cir.1992) (to extent that substantive due process claim is based on alleged retaliation for political views, it is coextensive with First Amendment claim, and there is "no need to enter the uncharted thicket of substantive due process to find an avenue for relief.").

Plaintiff's substantive due process claims with regard to the gag and banishment orders are co-extensive with his First Amendment claims. Plaintiff's claims of race discrimination in connection with these orders are more appropriately analyzed under the Equal Protection Clause. Thus, it would be inappropriate to apply a substantive due process analysis to these claims.

 In regard to the October 10th suspension, plaintiff has failed to allege what constitutional guarantee was infringed by the implementation of this order. He has not alleged that he sustained any liberty or property loss as a result of this order. He has not alleged that his salary was reduced. The only other consequence of the suspension apparent from the amended complaint was that plaintiff's office was moved to another building. This is not

sufficient to constitute a deprivation of property cognizable under the Due Process Clause. The facts pleaded in the amended complaint indicate that the suspension, which lasted four days, was incident to the commencement of a mayoral investigation into alleged misconduct in office by the plaintiff, and that it was rationally related to a legitimate government interest, namely, ensuring the integrity of the operations of the Division of Police during the pendency of the investigation.

Plaintiff also asserts a substantive due process claim based on acts of the defendants allegedly amounting to defamation, including the October 10th suspension, the gag and banishment orders and the 1997 report.

It is well established that injury to reputation alone is not a protected liberty interest. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Paul v. Davis*, 424 U.S. 693, 708, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). A person may have a protected liberty interest in his reputation, good name, honor and integrity, as well as being free to move about, live and practice his profession without the burden of an unjustified label of infamy. *Joelson v. United States*, 86 F.3d 1413 (6th Cir.1996). However, to establish a deprivation of a protected liberty interest in the employment context, the plaintiff must show a stigmatizing governmental action which so negatively affects his reputation that it effectively forecloses the opportunity to practice a chosen profession. *Id.* at 1420. Liberty interests are not implicated by allegations of improper or inadequate performance or charges of incompetency, neglect of duty or malfeasance, and a charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation. *Id.* In *Siegert*, 500 U.S. at 234, 111 S.Ct. 1789, the Supreme Court held that plaintiff's allegations that alleged defamation by the defendants resulted in an impairment of future employment opportunities was not sufficient to assert an injury

of constitutional magnitude, and that any injury caused by defendants to plaintiff's reputation, while possibly subject to redress under state tort law, did not constitute a claim under the constitution.

To state a constitutional claim, a plaintiff must plead facts demonstrating that he was so stigmatized by the allegedly defamatory statements that he was foreclosed from obtaining other employment opportunities. *Joelson*, 86 F.3d at 1421. In addition, a liberty interest will arise only when "as a result of the state action complained of, a result or status previously recognized by state law was distinctly altered or extinguished." *Davis*, 424 U.S. at 711, 96 S.Ct. 1155.

Here, the amended complaint contains only the bare allegation that the acts of the defendants resulted in "irreparable harm to [plaintiff] in his role in his present employment and irreparable injury to his ability to seek employment elsewhere." Amended Complaint, Paragraph 51(j). No facts are pleaded which show that plaintiff's status as police chief was in any way altered or extinguished as a result of the allegedly defamatory statements, nor has plaintiff alleged that he has made efforts to obtain comparable employment elsewhere which have been foreclosed by the alleged defamation. The complaint does not reveal how gag and banishment orders constituted defamation, let alone defamation sufficient to constitute a substantive due process violation.

The amended complaint does not state a claim for deprivation of a protected liberty interest through the alleged injury to plaintiff's reputation. Since plaintiff has failed to plead an injury of constitutional magnitude sufficient to constitute a violation of substantive due process, the individual defendants are entitled to qualified immunity on this claim. Plaintiff has also failed to show the existence of cases indicating that the banishment and gag orders would constitute an injury to plaintiff's reputation sufficient to constitute a substantive due process violation.

Plaintiff also asserts a substantive due process claim based upon an alleged infringement of his right to privacy based upon the 1997 report, which allegedly contained "false and malicious rumors ... about his private life[.]" Amended Complaint, Paragraph 48. Since plaintiff has alleged that the facts in the report about his private life were false, this claim is in essence no more that a restatement of his injury to reputation claim discussed above. He has failed to specifically identify in the complaint any aspect of his private life which should not have been revealed in the report because it was protected by a constitutional right to privacy.

There is no general constitutional right to privacy. *J.P. v. DeSanti,* 653 F.2d 1080, 1087 (6th Cir.1981). There is no general right to the nondisclosure of private information. *Cline v. Rogers,* 87 F.3d 176 (6th Cir.1996); *Doe v. Wigginton,* 21 F.3d 733 (6th Cir.1994). Zones of privacy may be created by more specific constitutional guarantees, but personal rights found in a guarantee of personal privacy must be limited to those which are fundamental or implicit in the concept of ordered liberty. *Davis,* 424 U.S. at 712–713, 96 S.Ct. 1155.

A right to privacy has been recognized in situations involving an individual's interest in independent decision making involving personal matters such as marriage, procreation, contraception, and family relationships, while other cases have recognized the individual's interest in avoiding disclosure of highly personal matters. *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1060–1061 (6th Cir.1998). In cases of the latter sort, the Sixth Circuit has stated that the individual's interest in nondisclosure of private information must be balanced against the public's interest in and need for the invasion of privacy. *Id.* at 1061. However, not all rights of privacy or interests in nondisclosure of private information are of constitutional dimension. *DeSanti,* 653 F.2d at 1091. The balancing of the individual's interest in nondisclosure against that of the public is only required where the individual privacy interest is of constitutional dimension. *Kallstrom,* 136 F.3d at 1061.

In *Kallstrom,* 136 F.3d at 1064, the Sixth Circuit concluded that the plaintiffs had stated a privacy claim of constitutional dimension because the disclosure of the personal information concerning the plaintiffs placed the plaintiffs at substantial risk of serious bodily harm or death, thereby affecting the fundamental liberty interest to be secure in one's person. Here, in contrast, no facts have been included in the amended complaint to identify the nature of the private information concerning the plaintiff which was allegedly disclosed or to show that the plaintiff's privacy interest in the nondisclosure of such information is of constitutional dimension. There are no pleaded facts indicating that plaintiff's interest in privacy was grounded on any recognized liberty interest or any personal rights which are fundamental or implicit in the concept of ordered liberty. This failure of pleading is particularly significant here in light of the allegations in the complaint that the 1997 report was a report of the investigation into alleged misconduct in office on the part of plaintiff, a public official, in which the public would ordinarily be expected to have a disclosure interest. The amended complaint does not state a substantive due process claim based on invasion of privacy. The individual defendants are entitled to qualified immunity on this claim.

The amended complaint does not state a substantive due process claim. In addition, the individual defendants are entitled to qualified immunity on the substantive due process claims.

## E. Race Discrimination Claims— Equal Protection.

Defendants have moved to dismiss plaintiff's § 1981 and § 1983 claims of race discrimination. Plaintiff has alleged that he was discriminated against on the basis of his race through the imposition of the gag and banishment orders and other acts

of the defendants allegedly designed to force him from his position as chief of police.

To survive a 12(b)(6) motion to dismiss claims of disparate treatment in employment based on race, a plaintiff must include factual allegations in the complaint which either indicate the existence of direct evidence of a discriminatory motive, or which support each element of a prima facie case under the criteria adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Huguley v. General Motors Corp.*, 52 F.3d 1364, 1371–1372 (6th Cir.1995). *See also Brown v. Maintenance & Industrial Services, Inc.*, 47 F.3d 1167 (unreported), 1995 WL 55056 (6th Cir.1995) (dismissal under Rule 12(b)(6) proper where complaint failed to show the existence of a prima facie case of discrimination); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988) (complaint properly dismissed where plaintiff failed to allege facts in support of all elements of a prima facie case of age discrimination.) *Cf. Andrews v. State of Ohio*, 104 F.3d 803, 806–810 (6th Cir.1997) (complaint must allege facts establishing all material elements of prima facie case of discrimination under Americans with Disabilities Act and Rehabilitation Act).

In *McDonnell Douglas*, the Supreme Court adopted standards for establishing a prima facie case of employment discrimination under Title VII of the Civil Rights Act of 1964. In an employment discrimination case, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by the defendant. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A claimant may establish a prima facie case by credible direct evidence of intentional discrimination, or by showing the existence of circumstantial evidence which creates an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The circumstantial evidence approach requires a showing by the plaintiff that: 1)

he is a member of a protected class; 2) he was qualified for the job; 3) he suffered an adverse employment decision; and 4) he was treated differently than similarly situated non-minorities. *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1166 (6th Cir.1996).

Plaintiff argues that the *McDonnell Douglas* test should not be applied to his §§ 1981 and 1983 claims, particularly in regard to the gag and banishment orders, because the alleged conduct of the defendants would have been unconstitutional even if it had been directed toward a nonemployee. This argument ignores the pleaded facts that plaintiff is an employee of the city of Columbus, and that the alleged acts of the defendants were related to an investigation into allegations of misconduct on the part of plaintiff in his capacity as chief of police. But for the fact that plaintiff was a city employee who was under investigation, the alleged First Amendment violations would never have occurred. It is therefore appropriate to analyze the disparate treatment allegations in the complaint under the *McDonnell Douglas* employment discrimination standards.

If plaintiff's argument were correct, then the *McDonnell Douglas* standards would never apply in a case against a government employer. Yet, it is well established that the *McDonnell Douglas* framework applies to employment discrimination claims brought under § 1983 against government employers. *See Boutros v. Canton Regional Transit Auth.*, 997 F.2d 198 (6th Cir.1993); *Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir.1988) (plaintiff must prove the *McDonnell Douglas* elements to establish an equal protection claim under § 1983). The framework also applies to discrimination claims under § 1981. *See Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir.1992). In fact, the *McDonnell Douglas* criteria have been so successful as a means of proof that modified versions of the test have been applied to equal protection claims in contexts other than employment. *See, e.g., United States*

*v. Avery,* 137 F.3d 343 (6th Cir.1997) (applying test similar to *McDonnell Douglas* framework to claims of racial discrimination in airport stops).

■ As with Title VII claims, § 1981 and § 1983 claims require proof of intentional discrimination on the part of the defendants. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (§ 1983); *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (§ 1981). Further, as required by the fourth element of the *McDonnell Douglas* prima facie case, a plaintiff alleging an equal protection violation must make at least a prima facie showing that similarly situated persons outside the plaintiff's class were treated differently. *See, e.g., Stemler v. City of Florence,* 126 F.3d 856 (6th Cir.1997) (selective prosecution); *Buchanan v. City of Bolivar, Tenn.,* 99 F.3d 1352 (6th Cir.1996) (disparate treatment based on race in matters of school discipline). Thus, in terms of determining the sufficiency of plaintiff's complaint, the use of the equal protection analysis would result in the application of similar standards.

■ Plaintiff contends that the complaint includes allegations showing direct evidence of race discrimination. Plaintiff refers to the testimony of defendant Rice concerning the reason for the gag order. Specifically, defendant Rice testified that he imposed the gag order because of his concern that plaintiff would raise the issue of race with the media. Amended Complaint, Ex. C, p. 16. Defendant Rice further stated that "it was just a concern that that issue being raised didn't cause great concern within the black community in the city." Amended Complaint, Ex. C, p. 17. He felt that the public, based on some comment that plaintiff might make, might consider the action taken on October 10th to be racially motivated. Amended Complaint, Ex. C., p. 18. He further testified

that the decision to go forward with the mayor's administrative investigation was not racially motivated. *Id.*

■ This court concludes that the above evidence does not meet the requirements for direct evidence. Direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor, and which patently shows the existence of unlawful discrimination. *Bartlik v. U.S. Dept. of Labor,* 73 F.3d 100, 103 n. 5 (6th Cir.1996). Direct evidence has also been defined as evidence which will prove the particular fact without reliance on inference or presumption. *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343 (7th Cir.1997). The comments of the parties must be considered in light of the full context, not in isolation. *Byrd v. Ronayne,* 61 F.3d 1026, 1033 (1st Cir.1995). Further, a statement which reflects merely consciousness of race as opposed to a racially discriminatory attitude does not constitute direct evidence of discrimination. *See Shuford v. Alabama State Bd. of Educ.,* 978 F.Supp. 1008 (M.D.Ala. 1997).

■ The statements in Exhibit C do not indicate that defendant Rice issued the gag order because plaintiff was African–American. The statements would not support a reasonable inference that Rice intended to subject plaintiff to an adverse employment action because of plaintiff's race. Rather, the testimony indicates that defendant Rice issued the gag order because he was afraid of how plaintiff might act in response to the investigation. The testimony suggests that Rice was concerned that plaintiff would attempt to undermine and jeopardize the integrity of the investigation by making unwarranted accusations of racism when, in Rice's view, plaintiff's race was not a factor in the investigation. These statements do not patently demonstrate the existence of unlawful discrimination.[1]

---

1. Even assuming that defendant Rice's motivations in imposing the gag order are deemed to constitute race discrimination, he would be

entitled to qualified immunity on this claim. The court has found no authority in existence at the time holding that mere race conscious-

The complaint is also devoid of any allegations that similarly-situated non-minority employees were treated differently in cases of suspensions or misconduct investigations. Plaintiff simply alleges that, to his knowledge, no other Columbus official or citizen had ever been subjected to an order like the gag and banishment orders issued in this case. However, plaintiff must allege facts showing that non-minority employees who were similarly situated in all respects were treated differently, *Mitchell*, 964 F.2d at 583, not simply that plaintiff's circumstances were unique.

 In order to plead a claim of employment discrimination, plaintiff must also allege that he was subjected to a "materially adverse" employment action by his employer. *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). "Reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Id.*

Here, the documents attached to the amended complaint as exhibits indicate that plaintiff was assigned to his home over a long holiday weekend from October 10, 1996 until October 14, 1996, during which time his duties were assumed by a deputy chief. Amended Complaint, Ex. B. He was instructed not to talk to the media about the pending investigation. *Id.* On October 14, 1996, plaintiff was reassigned his duties as police chief, in addition to police-related special assignments, and was required to perform those duties at the administrative offices of the Division of Fire. Amended Complaint, Ex. E. He was instructed not to enter police facilities without the consent of defendant Rice. *Id.* The complaint contains no allegations that plaintiff was ever subjected to any salary changes, suspension of pay, or changes in work hours. The allegations in the complaint fail to allege that plaintiff experienced any "materially adverse" consequences as a result of the defendants' actions.

The court concludes that the amended complaint fails to state claims of race discrimination, and that the motions to dismiss the race discrimination claims are well taken.

## F. Conspiracy Claims.

 Plaintiff has asserted a claim of conspiracy under 42 U.S.C. § 1985(3). A claim of conspiracy under § 1885(3) requires proof of the following elements: 1) a conspiracy of two or more persons; 2) for the purpose of depriving, directly or indirectly, a person or class of persons of equal protection of the laws; 3) an act in furtherance of the conspiracy; 4) which act causes injury to the person or property of the plaintiff or a deprivation of any right or privilege of a citizen of the United States. *Collyer v. Darling*, 98 F.3d 211, 223 (6th Cir.1996). A § 1985(3) conspiracy must be motivated by a racial or other class-based discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Vague and conclusory allegations of conspiracy unsupported by material facts will not be sufficient to withstand a motion to dismiss conspiracy claims under § 1983 or § 1985(3). *See Collyer*, 98 F.3d at 220; *Brooks v. American Broadcasting Cos., Inc.*, 932 F.2d 495 (6th Cir.1991); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984). In order to state a claim for relief under § 1985, there must be specific factual allegations showing the existence of the conspiracy, as well as allegations that the conspiring defendants acted with the specific intent to deprive the plaintiff of equal protection of the law, and general or conclusory allegations of conspiracy are not sufficient. *Azar v. Conley*, 456 F.2d 1382, 1384 (6th Cir.1972); *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971). Specific allegations are even more important in a case where qualified immunity has been raised as a defense. *Veney v. Hogan, supra.*

---

ness under similar circumstances would be sufficient to constitute illegal intentional dis-

crimination subject to redress under the Equal Protection Clause and § 1983.

The conspiracy allegations in the amended complaint are conclusory in nature. As previously indicated, the allegations in the amended complaint are insufficient to allege a claim of race discrimination against the defendants. The factual allegations contained in the amended complaint assert that the "ultimate intention" of defendants Rice and Lashutka was to force plaintiff "to resign or to seek out evidence to justify the ill-advised, premature, and erroneous conclusion they had already reached, namely, that evidence existed to establish that [plaintiff] had engaged in misconduct warranting his removal from office." This does not allege a race-based animus. Likewise, the complaint fails to allege that the defendants violated defendant's constitutional rights under the First Amendment with the purpose of depriving him of equal protection of the laws. The individual defendants are entitled to qualified immunity on this claim.

■ To the extent that plaintiff seeks to assert a conspiracy claim against defendant city of Columbus and the individual defendants in their official capacities, plaintiff's claim is barred by the intracorporate conspiracy doctrine, which holds that members of the same legal entity cannot conspire with one another so long as the alleged acts were within the scope of the defendants' employment. *Johnson v. Hills & Dales General Hospital,* 40 F.3d 837, 840 (6th Cir.1994); *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.,* 926 F.2d 505 (6th Cir.1991). The intracorporate conspiracy doctrine has been applied to governmental bodies. *See, e.g., Larson by Larson v. Miller,* 76 F.3d 1446 (8th Cir.1996); *Brace v. Ohio State University,* 866 F.Supp. 1069 (S.D.Ohio 1994). The individual defendants here are alleged to have acted within the scope of their employment in regard to a matter which was within the reach of their authority, and therefore, their acts fall within the intracorporate conspiracy doctrine.

## G. Conclusion Regarding Federal Claims.

The court concludes that plaintiff has failed to plead a violation of his federal constitutional or statutory rights. In addition, since plaintiff has failed to make out a violation of a clearly established constitutional right, the individual defendants are entitled to qualified immunity on plaintiff's claims under §§ 1981, 1983 and 1985(3).

## V. State Law Claims.

## A. Claims Under the Ohio Constitution.

■ Plaintiff has asserted claims under the Ohio Constitution. Defendants argue that plaintiff cannot pursue a private cause of action under the Ohio Constitution, citing *Provens v. Stark County Bd. of Mental Retardation and Developmental Disabilities,* 64 Ohio St.3d 252, 594 N.E.2d 959 (1992). In *Provens,* the Ohio Supreme Court, relying on the analysis of the United States Supreme Court in *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), held that public employees do not have a private cause of action against their employer to redress alleged violations by their employer of rights under the Ohio Constitution when there are other reasonably satisfactory remedies provided by statutory enactment and administrative process. This is true even though the statutory and administrative remedies vary from remedies which might be available through a civil action, so long as the statutory and administrative remedies are sufficiently fair and comprehensive. *Provens,* 64 Ohio St.3d at 260, 594 N.E.2d 959.

Relying on *Provens,* the court in *Yanacos v. Lake County, Ohio,* 953 F.Supp. 187, 192 (N.D.Ohio 1996), dismissed plaintiff's claims for infringement of his right to free speech and association under Article I, § 11 of the Ohio Constitution for failure to state a claim under Rule 12(b)(6). *See also Slauson v. New Philadelphia City School District Bd. of Educ.,* Slip Op. No.

93–AP–07–0054, 1994 WL 75612 (Ohio App.5th Dist.1994).

In the instant case, procedures were available under Chapter 4112 of the Ohio Revised Code to address plaintiff's claims of race discrimination and retaliation. Plaintiff also had an administrative remedy under Rule XIII of the Rules and Regulations of the Municipal Civil Service Commission of Columbus, Ohio to contest the actions of his employers. In addition, an action in mandamus pursuant to Ohio Revised Code § 2506.01 was available to challenge the orders of defendant Rice concerning plaintiff's suspension and any restrictions on plaintiff's rights of free speech or petition.

 The only claim raised by plaintiff under the Ohio Constitution which is arguably not covered by the rule announced in *Provens* is the claim concerning the search of his office which allegedly violated his rights under Article I, § 14 of the Ohio Constitution. *See Provens*, 64 Ohio St.3d at 256, 594 N.E.2d 959 (noting the recognition by the United States Supreme Court of an action in constitutional tort for Fourth Amendment violations in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)).

Defendants argue that plaintiff has not stated a claim under Article I, § 14. Defendants rely by analogy on *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) in which the Supreme Court held that a workplace search by a government employer to investigate work-related misconduct is not subject to the probable cause and warrant requirements of the Fourth Amendment, and is legal if it is reasonable under all the circumstances. Under *Ortega*, a workplace search is reasonable if it is "justified at its inception" and it is "reasonably related in scope to the circumstances" that prompted the search. *Id.* at 726, 107 S.Ct. 1492.

This court has found no Ohio authority which would indicate that the Ohio courts would give Ohio employees greater protection under the Ohio Constitution against

workplace searches than that provided by *Ortega* under the United States Constitution. Paragraph 15 of the amended complaint alleges simply that plaintiff's office was sealed and that his professional and personal belongings were searched. No facts are set forth which would indicate that the search of his office was unreasonable under the circumstances, nor has plaintiff alleged, even in a conclusory fashion, that the search was unreasonable. There are no allegations concerning who conducted the search, nor is it alleged that the individual defendants ordered or approved of the search. This claim, as pleaded, fails to state a claim under the Ohio Constitution.

Defendants' motions to dismiss plaintiff's claims under the Ohio Constitution are well taken.

**B. Intentional Infliction of Emotional Distress.**

 Count Three of the amended complaint is a claim for intentional infliction of emotional distress. The elements of the tort of intentional infliction of emotional distress under Ohio law are: 1) that the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress; 2) that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; 3) that the actor's actions were the proximate cause of the plaintiff;s psychic injury; and 4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure. *Pyle v. Pyle*, 11 Ohio App.3d 31, 463 N.E.2d 98 (1983).

 The conduct of the defendant must be so extreme and outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of*

*America,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983). *See also, Reamsnyder v. Jaskolski,* 10 Ohio St.3d 150, 462 N.E.2d 392 (1984) (extreme, atrocious, and intolerable conduct required to support an action for intentional infliction of serious emotional distress.) Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Yeager,* 453 N.E.2d at 671. The court can determine as a matter of law on a motion to dismiss whether the complaint alleges extreme or outrageous conduct. *Miller v. Currie,* 50 F.3d 373 (6th Cir. 1995); *Rogers v. Targot Telemarketing Services,* 70 Ohio App.3d 689, 591 N.E.2d 1332 (1990).

■ The resulting emotional injury must be an emotional injury which is both severe and debilitating. *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759 (1983). Serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case, and may include such mental ailments as "traumatically induced neurosis, psychosis, chronic depression, or phobia." *Paugh,* 6 Ohio St.3d at 78, 451 N.E.2d 759. In cases where the plaintiff failed to show that he sought medical or psychiatric help or was unable to work or otherwise function in his daily life, Ohio courts have held that the severe and debilitating injury requirement has not been met. *See, e.g., Dickerson v. International United Auto Workers Union,* 98 Ohio App.3d 171, 648 N.E.2d 40, 50 (1994) (citing cases); *Plikerd v. Mongeluzzo,* 73 Ohio App.3d 115, 596 N.E.2d 601 (1992); *Kurtz v. Harcourt Brace Jovanovich, Inc.,* 69 Ohio App.3d 267, 590 N.E.2d 772 (1990). Where the plaintiff has failed to sufficiently plead that he is debilitated or suffers from a mental condition sufficient to constitute serious emotional distress, dismissal is appropriate under Rule 12(b)(6). *See Wright v. MetroHealth Medical Center,* 58 F.3d 1130, 1139–1140 (6th Cir.1995); *Roe v. Franklin County,* 109 Ohio App.3d 772, 673 N.E.2d 172 (1996);

*Rogers,* 70 Ohio App.3d at 695, 591 N.E.2d 1332.

■ Plaintiff alleges that the "extreme, outrageous and intentional conduct" of the defendants caused him "to suffer extreme and severe emotional distress and outrage[.]" However, plaintiff acknowledges in the complaint that two of the charges brought against plaintiff before the Commission were sustained. An employer is not liable for an employee's emotional distress if it does no more than insist on its legal rights in a permissible way, even where it is foreseeable that such action will cause some degree of emotional distress. *Hanly v. Riverside Methodist Hospitals,* 78 Ohio App.3d 73, 603 N.E.2d 1126 (1991) (employer did not engage in extreme and outrageous conduct in suspending employee suspected of sexual harassment, investigating the allegations, and discharging employee after finding employee had engaged in harassment); *Deoma v. Shaker Heights,* 68 Ohio App.3d 72, 587 N.E.2d 425 (1990) (municipality's investigation of corruption within police department did not qualify as extreme and outrageous conduct).

Even assuming that the allegations in the complaint are sufficient to allege extreme and outrageous conduct on the part of the defendants, plaintiff has failed to set forth facts sufficient to allege that he sustained a severe and debilitating mental or emotional injury as a result of defendants' actions. Plaintiff's complaint fails to state a claim for intentional infliction of serious emotional distress.

**C. Invasion of Privacy.**

■ Count Four of plaintiff's amended complaint is a claim for invasion of privacy under Ohio law. Ohio law recognizes a cause of action for invasion of privacy in cases of: 1) the unwarranted appropriation or exploitation of one's personality; 2) the publicizing of one's private affairs with which the public has no legitimate concern; and 3) the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental

suffering, shame or humiliation to a person of ordinary sensibilities. *Sustin v. Fee,* 69 Ohio St.2d 143, 431 N.E.2d 992 (1982); *Housh v. Peth,* 165 Ohio St. 35, 133 N.E.2d 340 (1956).

No allegations in the amended complaint support a claim under the appropriation theory of invasion of privacy. Plaintiff argues that the acts of the defendants, including the publication of the 1997 report, would support a claim for invasion of privacy under the so-called "false light" theory of invasion of privacy, that being publicity that places the plaintiff in a false light. However, Ohio courts have consistently declined to recognize a cause of action under this theory. *See, e.g., M.J. DiCorpo, Inc. v. Sweeney,* 69 Ohio St.3d 497, 634 N.E.2d 203 (1994); *Kilcoyne v. Plain Dealer Publishing Co.,* 112 Ohio App.3d 229, 678 N.E.2d 581 (1996); *Greenwood v. Taft Stettinius & Hollister,* 105 Ohio App.3d 295, 303 n. 7, 663 N.E.2d 1030 (1995); *Bertsch v. Communications Workers of America, Local 4302,* 101 Ohio App.3d 186, 192, 655 N.E.2d 243 (1995) (Ohio does not recognize false light invasion of privacy). In light of the overwhelming weight of Ohio authority on this point, this court declines to become the first court in Ohio to recognize this theory.

▅▅▅ Ohio recognizes a cause of action for invasion of privacy due to the public disclosure of private information. The disclosure tort requires; 1) publicity, that is, disclosure of a public, as opposed to a private, nature; 2) the disclosure of facts which concern the private life of the individual, not his public life; 3) the publication of matters which are highly offensive and objectionable to a reasonable person of ordinary sensibilities; 4) an intentional publication; and 5) the publication of matters which are not of legitimate concern to the public. *Seta v. Reading Rock, Inc.,* 100 Ohio App.3d 731, 740, 654 N.E.2d 1061 (1995).

▅▅▅▅ To state a claim for the publication of facts concerning his private life, plaintiff must establish that the matter publicized was not left open to the public

eye or of public concern, but was truly a matter of his private concern. *Sustin,* 69 Ohio St.2d at 145, 431 N.E.2d 992; *Killilea v. Sears, Roebuck & Co.,* 27 Ohio App.3d 163, 166, 499 N.E.2d 1291 (1985); *Penwell v. Taft Broadcasting Co.,* 13 Ohio App.3d 382, 469 N.E.2d 1025 (1984). There is no liability under this theory where the information was readily available from other sources accessible to the public or where the matter publicized concerned a matter of public interest. *Strutner v. Dispatch Printing Co.,* 2 Ohio App.3d 377, 442 N.E.2d 129, 132–133 (1982). An action for publicizing one's private affairs is based on statements which are deemed to be true. *Bertsch,* 101 Ohio App.3d at 192, 655 N.E.2d 243.

Plaintiff alleges in paragraph forty-seven of the amended complaint that the 1997 draft investigative report included statements concerning plaintiff, "both personally and in his official role, despite the fact that Director Rice know or should have known they were false." These allegations fall short of alleging a claim for invasion of privacy under the public disclosure theory.

▅▅▅ First, the information contained in the report was alleged to be false, not true. Further, there are no allegations that the report contained any personal information concerning plaintiff's purely private affairs. This is particularly important in plaintiff's case, because plaintiff, as the chief of police of the city of Columbus, is a public figure, and public figures have a much weaker basis for privacy claims than average citizens. *Shibley v. Time, Inc.,* 45 Ohio App.2d 69, 341 N.E.2d 337 (1975). The complaint also lacks factual assertions or even bare allegations which would indicate that the inclusion of any personal information in the report would be highly offensive and objectionable to a reasonable person. The report itself was not filed as an exhibit to the amended complaint and is not a part of the record in this case.

▅▅▅▅ The remaining theory of invasion of privacy is the intrusion theory,

that is, the intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person or ordinary sensibilities. *Housh,* 165 Ohio St. at syllabus paragraph two. The court in *Killilea,* 27 Ohio App.3d at 166, 499 N.E.2d 1291, explained that the intrusion tort is not dependent upon publicity of private matters, but, akin to trespass, involves the intrusion into the plaintiff's private affairs, such as through wiretapping, watching or photographing a person through the windows of his residence, or harassing bill collection practices. *See also Hidey v. Ohio State Highway Patrol,* 116 Ohio App.3d 744, 689 N.E.2d 89 (1996) (intrusion consists of an intentional interference with a person's interest in solitude or seclusion, not matters which occur in public; shining flashlight inside plaintiff's pants constituted an intrusion). This theory limits liability to intentional intrusions which would be "highly offensive to a reasonable person." *Sustin,* 69 Ohio St.2d at 145, 431 N.E.2d 992. The wrongfulness of the intrusion focuses on the way it is accomplished. The intrusion must be done in a manner to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. *Strutner,* 2 Ohio App.3d at 378–379, 442 N.E.2d 129.

In paragraph fifteen, plaintiff alleges that his office was searched. There are no allegations that the search was conducted in an unreasonable manner. In paragraph forty-two of the amended complaint, plaintiff alleges that a secret team investigated his professional and personal life and that he was "never told what allegations this team was investigating, to whom they were speaking, what information was being collected, who the investigators were, or anything else about the probe." Plaintiff has acknowledged that he has no factual basis for an intrusion claim, contending that the investigation was secret and that he was not privy to the details or results of the investigation. He has not alleged that the investigators delved into matters which were purely personal and about which the public had no right to know. There are

also no facts alleged which would indicate that the investigation was conducted in a manner which would cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

The amended complaint fails to state a claim under Ohio law for invasion of privacy.

### D. Defamation.

In Count Five of the amended complaint, plaintiff alleges that the defendants defamed him "by the malicious publication of false and defamatory statements made from October 10, 1996 through the time of issuance of the 1997 Report." However, the amended complaint does not specifically reference any occasion on which the defendants allegedly made defamatory statements other than through the publication of the 1997 report of the mayoral investigation into plaintiff's conduct.

Under Ohio law, proof of a claim of defamation requires a showing of: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault amounting to at least negligence by the publisher; and 4) either the actionability of the statement regardless of special harm or the existence of special harm caused by the publication. *Piro v. Franklin Twp.,* 102 Ohio App.3d 130, 143, 656 N.E.2d 1035 (1995). Where a public official such as plaintiff claims that defamatory statements were published concerning him, he must prove by clear and convincing evidence that the statements were made with actual malice. *Scott v. News–Herald,* 25 Ohio St.3d 243, 496 N.E.2d 699 (1986); *Harris v. Plain Dealer Pub. Co.,* 40 Ohio App.3d 127, 532 N.E.2d 192 (1988).

Defendants argue that the defamation claim against them should be dismissed on the grounds that the statements were absolutely privileged, citing *Bigelow v. Brumley,* 138 Ohio St. 574, 37 N.E.2d 584 (1941). In *Bigelow,* the Ohio Supreme

Court held that officials appointed by the governor to prepare information to be distributed to the public concerning a proposed constitutional amendment in accordance with a statutory duty to do so were entitled to an absolute privilege in a defamation action. The purpose of the privilege is to encourage government officials to perform important public functions in their official capacity without fear of being held liable for damages in libel actions. *Id.,* 138 Ohio St. at 584, 37 N.E.2d 584.

■ Plaintiff contends that the privilege in *Bigelow* was superseded by the enactment of Ohio Revised Code § 2744.03(A)(6), which sets forth the rules governing the qualified immunity of local government employees. However, defendants correctly note that the concept of privilege as a defense to a claim of defamation is distinct from that of qualified immunity. One of the elements of the defamation claim is that the statements be unprivileged. A statement may be made under circumstances which render that statement privileged, and the public official may simultaneously be entitled to the protection of the qualified immunity defense under § 2744.03(A)(6). *See, e.g., Kremer v. Cox,* 114 Ohio App.3d 41, 682 N.E.2d 1006 (1996) (noting that coroner could claim both qualified privilege for statements regarding death certificate under defamation law and qualified immunity under § 2744.03(A)(6)).

Plaintiff further argues that the actions of the defendants do not fall within any of the categories of privileged circumstances recognized in *Bigelow.* The Ohio Supreme Court in *Bigelow,* 138 Ohio St. at 580, 37 N.E.2d 584, noted that "the occasions of absolute privilege are few and that the tendency is to limit them rather strictly" to a narrow list of situations, including the "official acts of the chief executive officers of state or nation[.]" However, as noted in the *Restatement (Second) of Torts* § 591, comment c (1977), many states have extended the absolute privilege to state officers of lower rank. In Ohio, the doctrine of absolute privilege has been extended to

encompass such officials as a village law director, *see Flynn v. Relic,* Slip Op. No. 41404, 1980 Ohio App. LEXIS 12103 (8th App.Dist.1980), a county commissioner, *see Tanner v. Gault,* 20 Ohio App. 243, 153 N.E. 124 (1925), a mayor and a chief of police, *see Shade v. Bowers,* 93 Ohio Law Abs. 463, 199 N.E.2d 131 (Com.Pl.1962). Analogously, the Ohio Supreme Court has extended the protection given to the "legislative proceedings of sovereign states," recognized in *Bigelow,* 138 Ohio St. at 580, 37 N.E.2d 584, to local government legislative bodies. *See Costanzo v. Gaul,* 62 Ohio St.2d 106, 403 N.E.2d 979 (1980). Thus, it is possible that the acts of the defendants in this case might fall within the realm of absolute privilege.

■ However, the question of privilege is usually not properly raised in a Rule 12(b)(6) motion unless the defense is obvious from the face of the complaint. Here, that is not the case. In determining whether a statement is privileged, the test is whether the statement has reference and relation to the subject matter of the official's actions, and pertinence to the occasion of the privilege. *Bigelow,* 138 Ohio St. at 586–587, 37 N.E.2d 584. The report and the factual details surrounding its preparation and release are not before the court at this time, and it cannot be determined on the current record whether the statements were made under circumstances which would support an absolute privilege. The motions to dismiss the defamation claim are therefore denied.

**E. Race Discrimination and Retaliation Under Chapter 4112.**

■■ Plaintiff asserts claims of race discrimination in employment and retaliation under Ohio Revised Code Chapter 4112. Federal case law interpreting Title VII is generally applicable to claims under Chapter 4112. *Little Forest Medical Center v. Ohio Civil Rights Comm'n,* 61 Ohio St.3d 607, 575 N.E.2d 1164 (1991); *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Comm'n,*

66 Ohio St.2d 192, 421 N.E.2d 128 (1981) (applying *McDonnell Douglas* criteria to discrimination claim under Chapter 4112). Thus, the deficiencies in pleading noted above in regard to plaintiff's claims of race discrimination under §§ 1981 and 1983 apply as well to plaintiff's discrimination claim under Chapter 4112.

The individual defendants also note the existence of a legal issue as to whether, as supervisors, they may be held individually liable as "employers" for discrimination under Chapter 4112. Ohio Revised Code § 4112.02 prohibits "any employer" from discriminating on the basis of race with respect to the terms and conditions of employment. This issue is currently pending before the Ohio Supreme Court. *See Sheek v. Industrial Powder Coatings, Inc.,* 80 Ohio St.3d 1447, 686 N.E.2d 275 (1997). In the analogous Title VII situation, the Sixth Circuit recently concluded in *Wathen v. General Electric Co.,* 115 F.3d 400 (6th Cir.1997), that an individual supervisor who does not otherwise qualify as an "employer" under Title VII may not be held personally liable.

Ohio courts are divided on this issue. *Compare Johnson v. Cox,* Slip Op. No. 96CA622, 1997 WL 152636 (Ohio App.4th Dist.1997); *Davis v. Black,* 70 Ohio App.3d 359, 591 N.E.2d 11 (1991) (individual supervisor who acts in the interest of an employer can qualify as "employer" under Ohio Revised Code § 4112.01(A)(2)) *with Tarver v. Calex Corporation,* 125 Ohio App.3d 468, 708 N.E.2d 1041 (7th Dist. 1998) (adopting view in Title VII cases and concluding that individual supervisor was not "employer"). Federal courts in Ohio have also expressed conflicting views on this question. *Compare Garraway v. Diversified Material Handling Inc.,* 975 F.Supp. 1026 (N.D.Ohio 1997) (finding individual liability); *DeLoach v. American Red Cross,* 967 F.Supp. 265 (N.D.Ohio 1997) (same); *with Blankenship v. BMI Refractories,* 966 F.Supp. 555 (S.D.Ohio 1997) (noting practice of Ohio courts in referring to Title VII law in construing Ohio statutes and finding no individual liability); *Osman v. Isotec, Inc.,* 960 F.Supp.

118 (S.D.Ohio 1997) (same). *Cf. Wathen,* 115 F.3d at 404 n. 3 (noting common practice of looking to federal counterpart in construing Kentucky law and applying same legal analysis to Title VII and Kentucky law claims in finding no individual liability).

This court agrees with those courts which have declined to impose individual liability for discrimination under Chapter 4112. This court agrees with the position that the language in § 4112.01(A)(2) "any person acting directly or indirectly in the interest of an employer" was intended merely to incorporate respondeat superior liability into the statute. The Ohio Supreme Court has recently stated that the language "employing four or more persons" in § 4112.01(a)(2)'s definition of employer "evidenc[es] an intention to exempt small businesses from the burdens of R.C. Chapter 4112[.]" *Collins v. Rizkana,* 73 Ohio St.3d 65, 74, 652 N.E.2d 653 (1995). To construe § 4112.01(A)(2) as authorizing liability for individual supervisors and co-workers would render the requirement of having four or more employees meaningless and would be contrary to the legislative intent recognized by the Ohio Supreme Court. Since plaintiff has pleaded no facts which would indicate that the individual defendants are persons "employing four or more persons within the state" so as to qualify as an "employer" under § 4112.01(A)(2), the complaint fails to state a discrimination claim against defendants Rice and Lashutka under Chapter 4112.

Plaintiff has also asserted a claim of retaliation under Ohio Revised Code § 4112.02(I), which prohibits "any person" from discriminating "in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07[.]" Federal law provides the relevant analysis for plaintiff's claim of retalia-

tion under Chapter 4112. *Chandler v. Empire Chemical, Inc.*, 99 Ohio App.3d 396, 650 N.E.2d 950 (1994). To establish a claim of retaliation under Title VII, the plaintiff must plead that he: 1) engaged in protected activity; 2) was the subject of an adverse employment action; and 3) that a causal link existed between the protected activity and the adverse employment action. *Equal Employment Opportunity Comm'n v. Ohio Edison Co.*, 7 F.3d 541, 543 (6th Cir.1993).

Plaintiff alleges in the amended complaint that the 1997 report was issued in retaliation for his announced intention to assert the claims contained in the amended complaint. In paragraph 45 of the amended complaint, plaintiff alleges that shortly after the Commission's decision on December 30, 1996, plaintiff presented to the defendants a draft of a complaint similar to the amended complaint along with a demand for redress. The 1997 report was allegedly released on July 1, 1997, six months after the Commission's decision. However, it has been held that a delay of even three months between the alleged protected activity and the alleged retaliatory act was sufficient as a matter of law to dispel any inference of a causal connection. *See Reeves v. Digital Equipment Corp.*, 710 F.Supp. 675 (N.D.Ohio 1989). Further, the amended complaint contains no factual allegations sufficient to allege that the plaintiff sustained an adverse employment action. Plaintiff has alleged no adverse consequences in respect to the terms and conditions of his employment stemming from the issuance of the report.

Further, the alleged "protected activity" was the presentation of a draft complaint similar to the amended complaint filed in this action to the defendants for the purpose of seeking a voluntary settlement for the payment of money damages by the defendants. Ohio Revised Code § 4112.02(I) bans retaliation where the employee "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." Plaintiff has not alleged that he did any of those things prior to the filing of the 1997 report. In addition, to the extent that plaintiff relied on any expressed intention to pursue claims under federal law, such conduct does not constitute protected activity under § 4112.02(I), which does not create a cause of action under Ohio law for alleged retaliation stemming from the filing of charges under federal law. *See Crawford v. Medina General Hospital*, 1997 WL 537675 (Ohio App.9th Dist.1997).

The amended complaint does not state a claim for discrimination or retaliation under Chapter 4112.

## VI. Prosecutorial Immunity.

The city has moved to dismiss the amended complaint on the basis that, even assuming that the individual defendants are policymakers, and that their acts constituted a policy which could render the city liable under § 1983, the individual defendants were acting in a prosecutorial capacity, and therefore were entitled to absolute prosecutorial immunity. Even if this were the case, it would not affect the city's liability, since the defense of absolute prosecutorial immunity is one which is available only to the individual defendants in their individual capacities. Personal immunity defenses are not applicable to official capacity suits. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

Executive branch officials other than prosecutors may be entitled to absolute immunity from suit for acts that are functionally equivalent to the acts of prosecutors. *Cullinan v. Abramson*, 128 F.3d 301, 308 (6th Cir.1997). However, absolute immunity is not the norm, and qualified immunity is generally deemed sufficient to vindicate the public interest in allowing government officials to do their work without undue fear of lawsuits. *Id.*

Prosecutorial immunity is absolute when the prosecuting activity is intimately associated with the judicial

phase of the criminal process. *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Courts must look to how closely related the defendant's activity is to the role of advocate. *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir.1997). Thus, absolute immunity has been found for acts in preparation for the initiation of judicial proceedings or trial, and which occur in the course of the defendant's role as an advocate for the state. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Immunity has also been extended to the filing of civil litigation or administrative proceedings. *See Cullinan*, 128 F.3d at 308; *Spear v. Town of West Hartford*, 954 F.2d 63 (2d Cir.1992). However, investigatory functions not relating to an advocate's preparation for the initiation of a prosecution or for a judicial proceeding, such as the preliminary gathering of evidence that may ripen into a prosecution, are too attenuated to the judicial process to afford absolute protection and are typically only protected by qualified immunity. *Ireland*, 113 F.3d at 1444–1445.

It is not clear from the facts alleged in the amended complaint whether defendant Lashutka was acting as a prosecutor in performing the acts alleged by the plaintiff. The events of October 10–14, 1996 occurred over a month prior to the filing of formal charges with the Commission. There is no information in the amended complaint to show how the alleged acts of the defendants on those dates were integrally linked to the initiation of charges or a judicial or administrative proceeding. Likewise, it is not apparent from the amended complaint whether the filing of the 1997 Report should be considered an integral part of a prosecution or an administrative function which would be protected only by qualified immunity. The applicability of absolute prosecutorial immunity is not apparent from the face of the amended complaint, and therefore, dismissal on that basis would not be appropriate.

However, the city is entitled to the dismissal of the amended complaint, with the exception of the state law defamation claim, on the basis that the amended complaint fails to state a claim, as discussed in relation to the individual defendants, *supra*.

## VII. Conclusion.

■ The court has determined that the amended complaint fails to state a claim under federal law, and that the majority of plaintiff's state law claims fail to state a claim for relief. The only remaining claim is that of defamation under state law. Pursuant to 28 U.S.C. § 1367(c)(3), this court has the discretion to decline to exercise supplemental jurisdiction of a state claim if the court has dismissed all claims over which it has original jurisdiction. Generally, "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Taylor v. First of America Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992). *See also Hankins v. The Gap, Inc.*, 84 F.3d 797, 803 (6th Cir.1996). The resolution of the defamation claim may involve substantial questions of state law involving whether the defendants are entitled to immunity under state law. This action is still in the early stages. Any savings in judicial resources to be gained by retaining supplemental jurisdiction would be outweighed by the interest in avoiding the unnecessary resolution of state law issues. Accordingly, this court declines to exercise jurisdiction over plaintiff's state law defamation claim.

In accordance with the foregoing, the motions to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) of the defendants are granted in regard to all claims, with the exception that the motions are denied in regard to the state law claim of defamation. All claims, with the exception of the state law defamation claim, are dismissed with prejudice at plaintiff's cost, and the clerk shall enter judgment for the defendants on those claims. The court *sua sponte* declines to exercise supplemental jurisdiction over the state law claim of

defamation, and that claim is hereby dismissed without prejudice.